UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  03-80593-CIV-HURLEY/LYNCH 

JAMES KEHOE, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

vs.

FIDELITY FEDERAL BANK AND TRUST,

Defendant.

_____/

Case No. 06-80557-CIV-HURLEY/HOPKINS

TIMOTHY NEILSEN and TIMOTHY G.
MARTIN, Individually and on Behalf of All
Others Similarly Situated,

Plaintiffs,

vs.

FIDELITY FEDERAL BANK AND TRUST,

Defendant.

_____/

**PLAINTIFFS' MOTION FOR EXPEDITED ENTRY OF PRELIMINARY
SETTLEMENT APPROVAL ORDER AND AUTHORIZATION TO PROVIDE DIRECT
MAIL AND PUBLICATION NOTICE TO CLASS MEMBERS**

Plaintiffs James Kehoe ("Kehoe"), Timothy Neilsen ("Neilsen"), and Timothy G. Martin

("Martin") (collectively, "Plaintiffs"), by and through their undersigned counsel, pursuant to Fed. R.

Civ. P. 23(e), hereby move this Court for expedited entry of an order granting preliminary approval

to a class action settlement of the above-captioned cases, conditionally certifying a settlement class,

authorizing notice to be sent to the members of the Class by direct mail, authorizing the publication



of a summary form of notice, and scheduling a final approval hearing.  In support hereof, Plaintiffs submit the incorporated memorandum of law, and state:

## I.      INTRODUCTION

On July 26, 2006, after three years of contentious litigation, countless motions filed by Kehoe and Fidelity and appeals to the Eleventh Circuit and the U.S. Supreme Court, Plaintiffs and defendant Fidelity Federal Bank and Trust ("Fidelity" or "Defendant") entered into a Settlement Agreement and Release (the "Settlement Agreement") which, together with the exhibits attached thereto, sets forth the terms and conditions for the proposed settlement (the "Settlement") of the claims alleged in the complaints.  A true and correct copy of the executed Settlement Agreement is attached hereto as **Exhibit "1"**.

Plaintiffs and their respective counsel believe this is an extremely fair, adequate and reasonable settlement of the disputed claims that confers substantial monetary and non-monetary benefits on a Class consisting of approximately 565,000 persons.  Plaintiffs and Fidelity engaged in extensive arm's-length negotiations that resulted in this Settlement.  The monetary portion of the Settlement provides a payment of $160 for each class member who returns a claim form and who does not opt out of the Class, unless the number of claimants is such that $160 per claimant plus attorneys' fees, costs, and administrative expenses would exceed $50 million, in which case each claimant will receive a pro-rata share so that the total will not exceed $50 million.  The non-monetary portion of the Settlement calls for injunctive relief against Fidelity to ensure that the personal information of Class Members, alleged to have been obtained and used in violation of the Driver's Privacy Protection Act,[1] has been completely destroyed as verified by an expert data

_____

[1]      18 U.S.C. §2721, *et seq.* (the "DPPA" or the "Act").

removal professional conducting an audit on Fidelity and, to the extent feasible, its direct mail agent, The Bureau. Both portions of the Settlement provide a meaningful and substantial benefit to the class of Florida citizens represented by Plaintiffs in these actions. In light of the procedural posture of the litigation at the time that the Settlement was reached, the risks associated with continued prosecution of these actions, and the significant uncertainties regarding the damages available, the Settlement is a fantastic result for the Class and should be approved.

The Settlement was reached after Kehoe and Fidelity spent years filing opposing multiple motions for summary judgment, motions for and opposing class certification, appeals to and briefs in the Eleventh Circuit and a petition for certiorari in the U.S. Supreme Court,[2] multiple depositions, multiple discovery motions, and other significant motions, and the filing of a related case with additional claims against Fidelity by Neilsen and Martin. Although Plaintiffs are confident that they would have prevailed on their pending motions and that a class action would have been certified, Plaintiffs also recognize that they would have faced a number of obstacles to establishing both liability and an entitlement to liquidated damages per violation of the DPPA should their cases have proceeded to trial. For instance, Fidelity has argued, *inter alia*, that it did not, as a matter of law, "knowingly" violate the Act, and has further argued that a class action is not the superior method of adjudicating these controversies because of the potential for "annihilating damages" were a certified class to prevail at trial. Fidelity has also sought to establish that Kehoe is not a suitable

---

[2]     The U.S. Supreme Court's denial of Fidelity's Petition for a Writ of Certiorari on March 27, 2006, in *Fidelity Federal Bank & Trust v. Kehoe*, 126 S. Ct. 1612 (Mem), 164 L. Ed. 2d 353 (Mar. 27, 2006), was notable insofar as Justices Scalia and Alito filed their own concurring opinion, noting that there were two equally important legal questions in the *Kehoe* case – whether liquidated damages could be recovered in the absence of actual damages and whether Fidelity could be held liable under the DPPA if it did not know that the State had failed to comply with the DPPA's "express consent" requirement – that might warrant Supreme Court review at the conclusion of the proceedings.

representative of the Class he seeks to represent because, Fidelity claims, there is no proof that his personal information was obtained and used by Fidelity.  Moreover, if these cases were to proceed to trial, Defendant would likely appeal any judgment favorable to the Class, imposing a significant additional delay on the payment of any recovery to Class members.

Finally, Plaintiffs seek expedited relief because, as the attached press release indicates (**Exhibit "2"** hereto), Cleveland-based National City Corp. ("National City"), will shortly be seeking approval from federal regulatory authorities to approve National City's acquisition of Fidelity's holding company.  National City and Defendant believe that this regulatory review will be aided by resolution of these class actions.  Plaintiffs agree to this approach because the settlement is contingent upon consummation of the merger, and Plaintiffs have concluded that the Settlement is clearly in the best interests of the Class and is significantly better than could have been achieved without the potential merger given Fidelity's stated financial condition.

Accordingly, Plaintiffs seek an order: (1) certifying a settlement class; (2) granting preliminarily approval of the settlement; (3) approving the form of notice to the settlement class and directing that such notice be made by direct mail and that a summary form of notice be published; and (4) scheduling a final approval hearing.

## II.     ARGUMENT

### A.     The Proposed Settlement Class Meets the Requirements of Rule 23 and Should be Certified

The parties seek to settle this case as a class.  "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'"  *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citations omitted).

For purposes of settlement, Plaintiffs seek certification of the following class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and which class is defined as follows:

All natural persons who meet all of the following criteria:

(i)     whose personal information was provided by the FDHSMV to the Bank in between May 1, 2000 and September 30, 2003;

(ii)    who are not and have not been employed by the Bank or any of its subsidiaries, parents (or their subsidiaries) or affiliates at any time since May 1, 2000; and

(iii)   who are not members of the federal judiciary or within the third degree of relationship to a member of the federal judiciary, or the spouses of such persons.

Plaintiffs contend that this Class meets all of the Rule 23 requirements for certification and should be conditionally certified by the Court.

## 1.    The Four Prerequisites of Rule 23(a) are Clearly Satisfied

In order for a class to be certified, the four prerequisites of Federal Rule of Civil Procedure Rule 23(a) must be satisfied. As discussed by this Court in *Fabricant v. Sears Roebuck*:

Rule 23(a) provides that one or more members may sue on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable ('numerosity'), (2) there are questions of law or fact common to the class ('commonality'), (3) the claims of the representative are typical of the claims of the class ('typicality'), and (4) the representatives parties must fairly and adequately protect the interest of the class ('adequacy').

202 F.R.D. 310, 313 (S.D. Fla. 2001). Plaintiffs contend this Class satisfies all of the requirements of Rule 23(a).

### a.    Numerosity

The numerosity requirement under Rule 23(a)(1) requires "that the class is so numerous that joinder is impracticable, not impossible." *Id.* (citing *Kreuzfeld, A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991); *see also Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986) (explaining that the focus of the numerosity inquiry is not whether the number of proposed class

members are "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical.")

There is no definite standard as to the size of a given class. *Fabricant*, 202 F.R.D. at 313. As explained in *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983), a plaintiff need not show the precise number of members of the class to substantiate numerosity:

> [W]hile there is no fixed numerosity rule, 'generally less than 21 is inadequate, more than 40 is adequate, with numbers between varying according to other factors.' *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1552 (11th Cir. 1986) *cert. denied*, 479 U.S. 883 (1986) (citing 3B Moore's Federal Practice, Para. 23.05[1] at n.7 (1978).

Based on records derived during discovery, Plaintiffs estimate that the Class for which conditional certification is sought contains approximately 575,000 members. Under any standard, Plaintiffs contend that the numerosity requirement set forth in Rule 23(a)(1) is clearly met.

### b.      Commonality

The commonality prerequisite set forth in Rule 23(a)(2) requires that there be questions of law or fact common to the class. Commonality is satisfied when there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant*, 202 F.R.D. at 313; *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) (stating that commonality is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members.) Federal courts recognize that the requirement under Rule 23(a)(2) that "questions of law or fact common to the class" exist is to be read liberally. *See, e.g,. Armstead*, 629 F. Supp at 280.

In this case, Plaintiffs contend that there are several common questions of law and fact arising out of the common course of conduct by Fidelity. These common factual and legal questions include the following:

(a)     Whether Defendant knowingly obtained, disclosed or used individuals' "personal information" and/or "highly restricted personal information" contained in the motor vehicle records of FDHSMV, for marketing and other purposes not permitted under the DPPA;

(b)     Whether Defendant or the state of Florida received the express written consent of Class Members, prior to Defendant obtaining their "personal information" and/or "highly restricted personal information" contained in motor vehicle records kept by FDHSMV; and

(c)     To what extent Defendant is liable to Plaintiffs and Class Members for damages and equitable relief under the DPPA.

Accordingly, the commonality prerequisite is met.

### c.     Typicality

The third prerequisite for maintaining a class action is that the claims of the class representative be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "In other words, typicality requires a nexus between the class representative's claims or defenses and the common questions of fact or law which unite." *Fabricant*, 202 F.R.D. at 313 (citing *Kornberg v. Carnival Cruise Lines*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Typicality, however, does not mean identicality, but rather a resemblance. *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993); *see also Brinkerhoff v. Rockwell Int'l Corp.*, 83 F.R.D. 479, 480 (N.D. Tex. 1979) (Typicality requires "that the claims or defenses of the class 'resemble' or 'exhibit the essential characteristics' of those of the representatives"); *Pendleton v. Schlesinger*, 73 F.R.D. 506, 509 (D.D.C. 1977), *aff'd*, 628 F.2d 102 (D.C. Cir. 1980). A plaintiff's claims are typical of the claims of the class "if they stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory." *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996).

Plaintiffs assert that their claims are not only typical of Class Members' claims, but also are virtually indistinguishable, because all such claims arise from a common course of conduct involving the alleged knowing obtainment and unauthorized use by Defendant of Class Members' "personal information" and/or "highly restricted personal information" contained in the motor vehicle records maintained by DHSMV for marketing and other purposes, in violation of the DPPA.

### d.      Adequacy of Representation

The fourth prerequisite of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class and (2) class counsel possesses the competence to undertake the litigation." *Fabricant*, 202 F.R.D. at 314; *see also Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985); *Johnson v. Georgia Hwy. Express, Inc.*, 417 F.2d 1122 (5th Cir. 1969).

Plaintiffs contend that they have no interests that are adverse or antagonistic to the interest of the Class, rather Plaintiffs and the Class share common interests, and Plaintiffs have shown their commitment to the vigorous pursuit of the claims they share with the Class.  Plaintiffs have retained qualified and experienced counsel, all of whom have extensive experience in complex litigation and class actions and all of whom have exhibited extensive knowledge of the law applicable to the Class Members' claims.  Plaintiffs' counsel also have sought and have been granted class certification in many other cases in both federal and state courts, including this Court.  Plaintiffs' counsel have committed the necessary resources to investigating and pursuing the claims of absent Class Members and have committed the resources necessary to fully protect the members of the Class.  Plaintiffs contend that they can establish the requirement of adequacy of representation.  Accordingly, Plaintiffs believe the members of the Class are more than adequately represented by Plaintiffs and their counsel in this cause.

2.     **The Class Should be Certified Under Rule 23(b)(2) and Rule 23(b)(3)**

Once the Rule 23(a) prerequisites are satisfied, in order to obtain class certification, the plaintiff must demonstrate also that the action satisfies one or more of the three subdivisions of Rule 23(b). Where, as in this case, "injunctive relief and damages are both important components of the relief requested, courts have regularly certified an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3) in the same action." *Davis v. Southern Bell Tel. & Tel. Co.*, No. 89-2839-CIV-NESBITT, 1993 WL 593999, *7 (S.D. Fla. Dec. 23, 1993), *reconsideration granted on other grounds*, 158 F.R.D. 173 (S.D. Fla. 1994) (citing *Waldrip v. Motorola, Inc.*, 85 F.R.D. 349 (N.D. Ga. 1980) and *Marshall v. Elec. Hose & Rubber Co.*, 68 F.R.D. 287 (D. Del. 1975)); *Diaz v. Hillsborough County Hosp. Authority*, 165 F.R.D. 689, 695 (M.D. Fla. 1996).

The injunctive relief provided for in this Settlement will prevent Defendant from using any data relating to "personal information" or "highly restricted information" obtained from motor vehicle records maintained by the FDHSMV, and will require Defendant to destroy that data that it previously obtained from FDHSMV. This injunctive relief will therefore provide important safeguards in the protection of the privacy of all members of the Class. More importantly, the Settlement will provide monetary relief of a sum of money up to $160 to each participating Class Member whose "personal information" or "highly restricted personal information" contained in FDHSMV motor vehicle records was obtained by Defendant for an allegedly impermissible purpose without the Class Member's permission, a claim that Defendant has continuously contested and does not concede even in its agreement to settle the case. Plaintiffs assert the Settlement provides substantial monetary relief and common benefit to the Class, is in the best interests of the Class, and fairly resolves the claims alleged. Therefore, it is appropriate for the Class in these actions to be certified for settlement purposes pursuant to Rule 23(b)(2) and Rule 23(b)(3).

####    a.    Rule 23(b)(2)

As this Court discussed in *Davis*, "Rule 23(b) governs certification of classes in cases involving requests for declaratory or injunctive relief." 1993 WL 593999, at *6. Parties seeking class certification under Rule 23(b)(2) must show that the defendant has acted or refused to act on grounds generally applicable to the class, and that final injunctive or declaratory relief must be appropriate to the class as a whole. Fed. R. Civ. P. 23(b)(2).

Plaintiffs contend that Defendant clearly acted on grounds generally applicable to the class, by requesting and obtaining from the FDHSMV motor vehicle records reflecting personal information and using that information without an authorized use. Plaintiffs contend that Defendant did not have a permissible purpose to obtain such information under the DPPA. As discussed above, Plaintiffs seek conditional certification of the Class under Rule 23(b)(2) in order to preclude Defendant from using the protected information and to require Defendant to destroy the information that Plaintiffs contend Defendant had no legal right to obtain or use. "Requesting . . . an injunction forcing defendants to comply with the law is precisely the type of class appropriate for class certification under Rule 23(b)(2)." *Fabricant*, 202 F.R.D. at 316.

####    b.    Rule 23(b)(3)

In seeking class certification under Rule 23(b)(3) a party must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individuals members" and "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. R. 23(b)(3). This "inquiry into whether common questions predominate over individual questions is generally focused on 'whether there are common liability issues which may be resolved efficiently on a class-wide basis.'" *Agan v. Katzman & Korr*, 222 F.R.D. 692 (S.D. Fla. 2004) (quoting *Brown v. SCI Funeral Serv. of Fla., Inc.*, 212 F.R.D. 602, 606 (S.D. Fla. 2003). Further, predominance is "easily met" when "all class members' claims arise

- 10 -

from a common nucleus of facts." *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 54 (D. Conn. 2000).

As discussed previously, Plaintiffs contend that the claims of the class members arise from Defendant's common course of conduct of allegedly knowingly obtaining and using individuals' "personal information" and/or "highly restricted personal information" contained in the motor vehicle records of FDHSMV, for marketing and other purposes not permitted under the DPPA. Thus, the Class Members' claims arise from a nucleus of operative facts and involve questions of law common to all Class Members. Therefore, Plaintiffs assert that individual issues with respect to the claims asserted are virtually non-existent and the issues of fact and law common to the class predominate.

"With regard to the inquiry as to whether the class action is the superior method for a particular case, the courts have found that the focus is on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)). Class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (internal citations omitted).

Generally, a class action is superior to other methods of adjudication where the individual claims would yield such small recoveries that individual actions would not be economically viable. *See, e.g., In re Inter-Op Hip Prophesies Liability Litig.*, 204 F.R.D. 330, 348 (N.D. Ohio 2001). In *Amchem Prod. Inc. v. Windsor*, the Supreme Court observed that a principle justification for class actions is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." 512 U.S. 591, 617 (1997). The size of each class member's damage claim is relatively modest, making it much more economically

viable to pursue this case as a class.  A class action is not only the superior method for resolving this controversy; it is the only viable way for the Plaintiffs to seek redress for the violations of the DPPA.

Accordingly, this Court should conditionally certify a settlement class pursuant to Rule 23(b)(2) and Rule 23(b)(3).

**B.      Settlement of the Action Is In the Best Interests of the Class**

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive court approval.  In determining whether to approve the Settlement, the Court should be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (citing *United States v. Miami*, 614 F.2d 1322, 1344 (5th Cir. 1980)); *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (in analyzing a settlement, the clear policy in favor of encouraging settlements must be taken into account).

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Access Now*, 2002 WL 1162422, at *4 (there is an overriding public interest in favor of settlement, particularly in class actions) (citing *Cotton*, 559 F.2d at 1331).  This is, in part, because of the complexity and size of class actions:

> Particularly in class action suits, there is an overriding public interest in favor of settlement […] It is common knowledge that class action suits have a well deserved reputation as being most complex.  The requirement that counsel for the class be experienced attests to the complexity of the class action […] In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources.

*Cotton*, 559 F.2d at 1331 (citing *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826 (5th Cir. 1975); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)); *see also Ass'n*

*for Disabled Ams. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (same) (citing *Cotton*, 559 F.2d at 1331).

      In addition:

> Complex litigation – like the instant case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions […] Although class action settlements require court approval, such approval is committed to the sound discretion of the trial court.

*In re U.S. Oil*, 967 F.2d at 493-94 (citing Fed. R. Civ. P. 16(a), (c), 23(e); *Bennett*, 737 F.2d at 987; *Cotton*, 559 F.2d at 1331).

      Accordingly, a class action settlement should be approved so long as it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986; *see also Access Now*, 2002 WL 1162422, at *4; *Ass'n for Disabled Ams.*, 211 F.R.D. at 466; *Gagnon v. Serv. Trucking, Inc.*, No. 5:02-CV-342-OC-10GRJ, 2004 WL 290743, at *1 (M.D. Fla. Feb. 3, 2004) (approving settlement agreement that Court determined was fair, adequate and not the product of collusion) (citing *Cotton*, 559 F.2d at 1330).

      In making a determination that a proposed settlement is fair, adequate and reasonable, courts "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Secs. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1998), *aff'd*, 899 F.2d 21 (11th Cir. 1990)) (citing *In re U.S. Oil*, 967 F.2d at 493).

      Here, Plaintiffs and Fidelity arrived at an agreement for the Settlement of the actions and memorialized that agreement in the Settlement Agreement, which is attached hereto as Exhibit "1." The Settlement Agreement contains all the material terms of the Settlement, including the manner

and form of notice to be given to the Settlement Class, the contingencies or conditions to the Settlement's final approval, and other terms.

In addition, counsel for Plaintiffs communicated with their clients throughout the litigation of these actions, including with respect to the propriety of the Settlement.

In light of the foregoing, Plaintiffs believe the Settlement is in the best interests of the Settlement Class.

### C.     The Proposed Notice is Adequate

The parties negotiated the form of a notice (the "Notice" and "Summary Notice") to be disseminated to the Settlement Class to notify them of the terms of the Settlement and of their rights in connection with the Settlement.  The Notice and Summary Notice are attached to the Settlement Agreement as Exhibits A and E.

The Notice and Summary Notice will be provided to Settlement Class members to inform them of the terms of the Settlement, their rights in connection with the Settlement, and the date of the hearing at which the parties will submit the Settlement for final approval by the Court.  The Notice and Summary Notice have been carefully drafted to comply with Federal Rules and notions of due process.

A claim form will be included in each Notice.  This document is attached to the Settlement Agreement as Exhibit B.  Settlement Class members who wish to share in the Settlement proceeds will complete and mail their claim forms to *Fidelity DPPA Settlement*, RSM McGladery, P.O. Box 42506, Philadelphia, PA  19101, the Settlement Administrator agreed upon by all Parties and retained by Fidelity.  All claims forms must be postmarked within ninety (90) days after Notice is mailed.

The parties agreed to use the following methods for notifying Settlement Class members of the Settlement, which counsel for all parties believe is the best notice practicable given the size of

- 14 -

the Settlement Class: (a) U.S. Mail to the address of the Class members stated on the list provided to Plaintiffs' counsel by the Florida Department of Highway Safety and Motor Vehicles ("FDHSMV"), updated with information provided in the United States Postal Service National Change of Address Database.  For any returned notices, the Settlement Administrator will attempt to locate the class member through the use of the Transunion Address database, and remail the notice; and (b) Summary Notice via publication in the following Florida newspapers: *Palm Beach Post*, *Port St. Lucie Post*, *Ft. Lauderdale Sun-Sentinel*, *Miami Herald (Broward edition)* and *Vero Beach Press Sentinel*.  Upon entry of the Preliminary Approval Order, Fidelity's counsel will cause the Notice and Summary Notice to be published as stated above.

Rule 23(c)(2) notice must be "the best practicable notice under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir.), *cert. denied*, 474 U.S. 902 (1985).  Although notice by direct mail is often the "best practicable notice," it is not required in all circumstances, and the court is granted "considerable discretion . . . in fashioning notice to a class."  *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120-21 (8th Cir.) ("[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad reasonableness standards imposed by due process."), *cert. denied*, 423 U.S. 864 (1975).

The notice of the proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.  *In re Prudential Ins. Co. of Am. Sales Practices*

*Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections."); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977) ("Notice in a class suit must present a fair recital of the subject matter and proposed terms and [give] an opportunity to be heard to all class members."). Thus, due process does not require actual notice, but rather a good faith effort to provide actual notice. *In re Cherry's Petition to Intervene*, 164 F.R.D. 630, 636 (E.D. Mich. 1996).

Here, the proposed method of notice via direct mail at the Settlement Class members' address as provided by the FDHSMV, updated through the United States Postal Service National Change of Address Database and the Transunion Address database, and the publication of the Summary Notice in various Florida newspapers is clearly the best practicable notice in these circumstances, and is a good faith effort to notify the Settlement Class of the pendency of this action, the proposed settlement, and their rights and responsibilities as a result of the Settlement.

Upon notification of the Settlement, Settlement Class members have three choices: (1) share in the Settlement proceeds by submitting a proof of claim form; (2) exclude themselves from the Settlement by "opting out" of the Settlement Class, in which case they will not participate in the Settlement recovery and will retain their right to bring individual claims against Fidelity; or (3) object to the Settlement and/or the attorneys' fee application.

In order to participate in the Settlement, Settlement Class members must submit their claim forms within ninety (90) days after Notice is mailed. Summary Notice shall be published on or before the same date Notice is mailed. Settlement Class members who wish to exclude themselves

from the Settlement must request exclusion within 45 days of the date set by this Court for the final fairness hearing.

Any Settlement Class members who wish to object to the Settlement must file and serve a notice of their intention to object, and must thereafter file an objection at least thirty (30) days before the Court's final fairness hearing. Objecting parties can submit a brief in opposition to the Settlement and can appear at the final approval hearing to present their arguments, though appearance is not required.

This Court should find that the Notice and the procedures for its dissemination are reasonably calculated to provide notice of the Settlement to the Settlement Class.

**D.     The Settlement Should Be Preliminarily Approved**

The approval of the proposed settlement of a class action is a matter addressed to the discretion of the trial court. *In re U.S. Oil*, 967 F.2d at 493-94 (citing Fed. R. Civ. P. 23(e); *Bennett*, 737 F.3d at 987; Cotton, 559 F.2d at 1331); *see also In re Sunbeam*, 176 F. Supp. 2d at 1329 (a district court is vested with broad discretion, and a court's discretion is reviewed for an abuse of discretion) (citing *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982)).

In determining whether to approve preliminarily the Settlement terms themselves, the Court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the Settlement is in the best interests of those whose claims will be extinguished. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) (quoting 2 Herbert B. Newberg, *Newberg on Class Actions*, § 11.40 (1985)).

Also, a court must determine that the settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Gagnon*, 2004 WL 290743, at *1 (citing *Cotton*, 559 F.2d at 1330). Thus, at the preliminary approval stage, a court should examine whether the settlement is within the range of possible final approval, or, in other words, whether there is probable

were fully negotiated by the Parties, and the Parties each made and obtained concessions on difficult issues.

In addition, Plaintiffs' counsel kept their clients informed during the course of settlement discussions and sought their input as to the adequacy of the Settlement. Indeed, despite the fact that the final settlement meeting that resulted in an agreed upon settlement term sheet was held on July 5, 2006 – the day after a national holiday – plaintiff Neilsen spent three hours meeting with his lawyers before the settlement session and thereafter spent six hours participating in the final settlement meeting. Hence, the Settlement should be preliminarily approved.

At the Final Hearing, any Settlement Class members who timely file and serve their objections may voice their concerns to the Court. The Court can then consider the merits of the Settlement in light of any objections and determine whether to grant final approval to the Settlement.

At the Final Hearing, Plaintiffs' counsel will have submitted briefs and other documents in support of the Settlement and in support of their request for attorneys' fees and reimbursement of expenses. If the Court finds the Settlement fair and reasonable, the Court should then enter the Final Order and Judgment (attached to the Settlement Agreement as Exhibit C), dismissing with prejudice the action and effecting a release of all claims that were brought or could have been brought in the action.

## III.  CONCLUSION

Plaintiffs respectfully request that this Court find preliminarily that the Settlement is fair, reasonable and adequate, and that the proposed forms of notice and summary notice to the Settlement Class members of the terms of the Settlement and of their rights in connection with the Settlement are adequate and authorized.

WHEREFORE, Plaintiffs jointly seek an order: (1) granting preliminarily approval of the Settlement; (2) certifying the Settlement Class; (3) approving the form of Notice to the Settlement

Class and authorizing Notice to be sent by U.S. Mail and Summary Notice be published; and (4) scheduling a final approval hearing on or about ninety (90)days from the date of the entering of the Preliminary Approval Order.

Dated: July 27, 2006

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

By: _____

Paul J. Geller
Florida Bar No. 984795
pgeller@lerachlaw.com
Stuart A. Davidson
Florida Bar No. 0084824
sdavidson@lerachlaw.com
197 S. Federal Highway, Suite 200
Boca Raton, Florida 33432
(561) 750-3000 Telephone
(561) 750-3364 Facsimile

*Attorneys for Plaintiffs Timothy Neilsen, Timothy
G. Martin, James Kehoe and the Class*

**PATHMAN LEWIS LLP**
Wayne Pathman
Florida Bar No. 586536
wpathman@pathmanlewis.com
Roger Slade
Florida Bar No. 41319
rslade@pathmanlewis.com
Marc Pugliese
Florida Bar No. 86169
mpugliese@pathmanlewis.com
One South Biscayne Tower
2 S. Biscayne Blvd.
Miami, FL 33131
Telephone: 305/379-2425
305/379-2420 (fax)

Tod Aronovitz
Florida Bar No. 186430
*ta@aronovitzlaw.com*
ARONOVITZ TRIAL LAWYERS
Suite 2700 – Museum Tower
150 W. Flagler Street
Miami, FL 33130
Telephone: 305/372-2772
305/375-0243 (fax)

John A. Yanchunis
Florida Bar No. 324681
*jyanchunis@jameshoyer.com*
Mark S. Fistos
Florida Bar No. 909191
*mfistos@jameshoyer.com*
JAMES HOYER NEWCOMER &
   SMILJANICH, P.A.
3301 Thomasville Road, A200
Tallahassee, FL 32308
Telephone: 850/325-2680
850/325-2681 (fax)

**Counsel for Plaintiff James Kehoe and the Class**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished upon

the following individuals by U.S. Mail on the 27th day of July, 2006:

Roger Slade
Marc Pugliese
PATHMAN LEWIS LLP
One South Biscayne Tower
2 S. Biscayne Blvd.
Miami, FL 33131
Telephone: 305/379-2425
305/379-2420 (fax)

Tod Aronovitz
ARONOVITZ TRIAL LAWYERS
Suite 2700 – Museum Tower
150 W. Flagler Street
Miami, FL 33130
Telephone: 305/372-2772
305/375-0243 (fax)

L. Louis Mrachek
Roy E. Fitzgerald
Alan B. Rose
PAGE, MRACHEK, FITZGERALD
  & ROSE, P.A.
505 S. Flagler Drive, Suite 600
West Palm Beach, FL 33401
(561) 655-2250 Telephone
(561) 655-5537 Facsimile

**Counsel for Defendant Fidelity Federal Bank & Trust**

- 21 -

John A. Yanchunis
Mark S. Fistos
JAMES HOYER NEWCOMER &
  SMILJANICH, P.A.
3301 Thomasville Road, A200
Tallahassee, FL 32308
Telephone: 850/325-2680
850/325-2681 (fax)

***Counsel for Plaintiff James Kehoe***

Paul J. Geller

I:\Fidelity Federal (C) 24100\MOT Prelim Approval -final.doc

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") dated as of July 21, 2006, is entered into by and between plaintiff JAMES KEHOE and plaintiffs TIMOTHY NEILSEN and TIMOTHY G. MARTIN (the "Named Plaintiffs"), individually and as representatives of the "Plaintiff Class" (as defined herein), and FIDELITY FEDERAL BANK & TRUST (the "Bank"), subject to approval by the Court (as defined herein). The Named Plaintiffs, the Bank and the Plaintiff Class are collectively referred to as the "Parties."

## RECITALS:

WHEREAS, the Named Plaintiffs filed actions which are currently pending in the United States District Court for the Southern District of Florida (the "Court"), entitled *Kehoe v. Fidelity Federal Bank and Trust*, Case No. 03-80593-CIV-HURLEY/LYNCH (S.D. Fla.), and *Nielsen v. Fidelity Federal Bank and Trust*, Case No. 06-80557-CIV-HURLEY/HOPKINS (S.D. Fla.) (collectively, the "Litigation").

WHEREAS, the Named Plaintiffs have asserted claims for violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, seeking damages and injunctive relief, on their own behalf and on behalf of a class of persons similarly situated, as a result of the Bank's allegedly obtaining, disclosing, or using for unauthorized purposes certain personal information of the Plaintiff Class contained in their motor vehicle driving records maintained with the State of Florida Department of Highway Safety and Motor Vehicles.

WHEREAS, Counsel for the Named Plaintiffs and the Plaintiff Class ("Plaintiffs' Counsel") have conducted a thorough investigation of the facts relating to the claims alleged and the underlying events and transactions in the Litigation, including reviewing documents through class certification discovery and taking discovery, including both written discovery and

depositions.  Plaintiffs' Counsel has also made a thorough study of the legal principles applicable to the claims asserted against the Bank.

WHEREAS, Plaintiffs' Counsel and the Bank's Counsel (as defined herein) have engaged in extensive arm's length negotiations concerning the settlement of the claims asserted in the Litigation.

WHEREAS, the Named Plaintiffs and Plaintiffs' Counsel have concluded, based upon the aforementioned investigation, study, negotiations and discovery taken, and taking into account the sharply contested issues involved, the expense and time necessary to prosecute the Litigation through trial and additional appeals, the risks and costs of further prosecution of the Litigation, the uncertainties of complex litigation, and the substantial benefits to be received pursuant to this Agreement, that a settlement with the Bank on the terms set forth herein is fair, just, equitable, reasonable, adequate and in the best interests of the Named Plaintiffs and the Plaintiff Class.  The Named Plaintiffs and Plaintiffs' Counsel have thus agreed to settle this Litigation with the Bank on the terms set forth herein.

WHEREAS, the Bank's parent, Fidelity Bankshares, Inc., has negotiated to be acquired by National City Corporation, and this settlement is contingent on the successful completion of that acquisition.

WHEREAS, the Bank denies each of the claims asserted against it in the Litigation and denies any and all liability.  The Bank nevertheless desires to settle the Litigation and the claims asserted in the Litigation, on the terms and conditions set forth herein, for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation, and for the purpose of putting to rest the controversies engendered by the Litigation.

## AGREEMENT:

NOW THEREFORE, intending to be legally bound and acknowledging the sufficiency of the consideration and undertakings set forth below, the Parties agree, subject to the approval of the Court, and the provisions contained herein, that the Litigation and the Settled Claims against the Released Persons (all as defined herein) are finally and fully compromised and settled and the Litigation shall be dismissed with prejudice as follows:

### Section 1.       Denial of Liability; No Admissions

The Parties enter into this Agreement to resolve the dispute that has arisen among them and to avoid the burden, expense, and risk of litigation.  In entering into this Agreement, the Bank does not admit, and specifically denies, that it has breached any contract, violated or breached any duty, or engaged in fraud, misrepresentation, or deception, or violated any federal, state, or local law, any regulations or guidelines promulgated pursuant to those laws, or any other applicable laws, regulations, guidelines, or any other legal requirements.  Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected therewith or relating thereto, shall be construed as an admission or concession by the Bank of any such violations or failures to comply with any applicable law, regulation, guideline or any other legal requirements.  Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of the Bank or to establish the existence of any condition constituting a violation of or non-compliance with any applicable law, regulation, guideline or any other legal requirements.

### Section 2.       Definitions

As used in this Agreement, the following terms shall be defined as set forth below:

3

2.0     Administrative Expenses. "Administrative Expenses" shall mean any and all costs of administering this settlement, including, but not limited to, amounts paid to the Settlement Administrator, costs of printing, mailing, and publishing notice to the Class Members.

2.1     Bank's Counsel. "Bank's Counsel" shall mean L. Louis Mrachek, Esq., Page, Mrachek, Fitzgerald & Rose, P.A., and the attorneys practicing law therein.

2.2     Class Action Complaints. "Class Action Complaints" means the complaints filed in the Litigation by Named Plaintiffs as named representatives on behalf of themselves individually and a plaintiff class on or about July 1, 2003 and June 9, 2006.

2.3     Claimant. "Claimant" shall mean any Class Member who completes, signs and submits a Claim Form.

2.4     Claim Form. "Claim Form" means the Claim Form substantially in the form attached hereto as Exhibit B and made a part hereof.

2.5     Class Member. "Class Member" shall mean any member of the Plaintiff Class (as defined herein).

2.6     Class Notice. "Class Notice" shall mean the Notice of Class Action Settlement substantially in the form attached hereto as Exhibit A and made a part hereof.

2.7     [Reserved]

2.8     Deadline. "Deadline" shall mean the date set forth in the Class Notice by which a Claim Form must be postmarked to be considered timely, which shall be no later than 90 days after the Claim Form is mailed to the potential Class Members by the Settlement Administrator.

4

2.9    <u>DHSMV</u>.  "DHSMV" shall mean the State of Florida Department of Highway
       Safety and Motor Vehicles.

2.10   <u>Effective Date</u>.  The "Effective Date" of this Agreement shall mean the date upon
       which all of the conditions set forth in Section 13 have been satisfied; <u>provided,
       however</u>, that the Bank has not exercised its right of rescission under Section
       10(b).

2.11   <u>Final Order and Judgment</u>.  "Final Order and Judgment" shall mean an Order of
       Court and Judgment finally approving this Agreement and the settlement provided
       herein, under Rule 23 of the Federal Rules of Civil Procedure, substantially in the
       form attached hereto as <u>Exhibit C</u> and made a part hereof.

2.12   <u>Plaintiff Class</u>.  The "Plaintiff Class" shall have the meaning set forth in Section 3
       hereof.

2.13   <u>Plaintiffs' Counsel</u>.  "Plaintiffs' Counsel" means, collectively, Roger Slade, Esq.,
       Pathman Lewis LLP and the attorneys practicing law therein; Paul J. Geller, Esq.,
       Lerach Coughlin Stoia Geller Rudman & Robbins LLP and the attorneys
       practicing law therein; Tod Aronovitz, Esq., Aronovitz Trial Lawyers and the
       attorneys practicing law therein; and John A. Yanchunis, Esq., James Hoyer
       Newcomer & Smiljanich, P.A. and the attorneys practicing law therein.

2.14   <u>Preliminary Approval Order</u>.  "Preliminary Approval Order" shall mean an Order
       of Court preliminarily or conditionally approving this Agreement and the
       settlement provided herein, under Rule 23 of the Federal Rules of Civil
       Procedure, substantially in the form attached hereto as <u>Exhibit D</u> and made a part
       hereof.

2.15   <u>Released Persons</u>.  "Released Persons" shall mean the Bank and all of its affiliated, subsidiary, and parent companies (and any other subsidiaries thereof), and any other entity or person controlling, or controlled by, such an entity, doing business in their own names, and doing business under any other names, and each of their respective officers, directors, partners, insurers, employees, associates, trustees, agents, contractors (including, *inter alia*, The Bureau, Inc.), accountants, attorneys (including any consultants hired by counsel), predecessors, successors, and assigns.

2.16   <u>Settled Claims</u>.  "Settled Claims" means and includes any and all claims, demands, actions, causes of action, rights, offsets, suits, damages, liquidated damages, punitive damages, lawsuits, liens, losses or liabilities of any kind whatsoever, in law or in equity, including monetary, injunctive or declaratory relief, whether known or unknown, alleged or not alleged in the Litigation, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, which the Named Plaintiffs or any member of the Plaintiff Class has had, now has, or may have in the future which were or could have been raised in the Litigation or arising out of or relating in any way to the data the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003, including but not limited to, any and all claims for alleged obtainment, use, representation, misrepresentation, disclosure, incorrect disclosure, failure to disclose, acts (legal or illegal), omission, failure to act with due care, deception, act of unconscionability, act of illegality, unfair business practices, breach of contract, unfulfilled promise, breach of warranty or fiduciary duty, conspiracy, or violation of any consumer protection statute, any applicable state unfair trade practice statute, any applicable federal, state or local privacy law (including without limitation the DPPA) or any other body of case or statutory or

common law, federal or state, arising out of or relating in any way to the Class
Action Complaints or the facts and circumstances giving rise thereto, including all
claims for general, compensatory, actual, special, liquidated, indirect, incidental,
consequential or punitive damages, as well as any and all penalties, attorneys'
fees, interest and costs of suit.

2.17 <u>Settlement Administrator</u>.  "Settlement Administrator" means RSM McGladery or
such other settlement administrator designated by the Bank and approved by
Named Plaintiffs, such approval not to be unreasonably withheld, delayed or
conditioned.

2.18 <u>Timely and Documented Claim</u>.  "Timely and Documented Claim" shall mean a
Claim Form submitted by a Class Member (i) signed and submitted under penalty
of perjury; (ii) providing all requested information; and (iii) that is received by the
Settlement Administrator with a postmark of on or before the Deadline.

**Section 3.  <u>Certification Of Plaintiff Class</u>**

For settlement purposes only upon the express terms and conditions set forth in this
Agreement, the Parties agree that a class may be certified in this Litigation as provided in this
Section 3.  The Parties will jointly request that the Court certify a class (referred to herein as the
"<u>Plaintiff Class</u>") defined as follows:

a.   All natural persons who meet all of the following criteria:

(i)   whose personal information was provided by the
DHSMV to the Bank in between May 1, 2000 and
September 30, 2003;

(ii)   who are not and have not been employed by the
Bank or any of its subsidiaries, parents (or their
subsidiaries) or affiliates at any time since May 1,
2000; and

(iii)    who are not members of the federal judiciary or
within the third degree of relationship to a member
of the federal judiciary, or the spouses of such
persons.

b.      If this Agreement is not approved by the Court pursuant to the Final Order and

Judgment, this Agreement, the conditional class certification provided herein, the settlement

provided herein (including any modifications made with the consent of the Parties), and any

action taken or to be taken in connection therewith shall be terminated and shall become null and

void and have no further force or effect, the Preliminary Approval Order shall be vacated without

prejudice to the right of any of the Parties to seek or oppose the certification of a plaintiff class

(including by way of objection to the definition and members of said class), the Parties shall be

restored to their respective positions existing prior to the execution of this Agreement, and the

Parties' rights and obligations with respect to the use of this Agreement and the settlement

contemplated hereby will be subject to Section 19(n) hereof.

**Section 4.      <u>Settlement Consideration to Plaintiff Class; Administration of
Settlement</u>**

a.      Subject to Section 4(b) hereof, each Claimant who submits a Timely and

Documented Claim under this Agreement (and who has not timely opted out as provided in

Section 10(a) hereof) ("Responding Person"), and who is confirmed by the Settlement

Administrator to be a Class Member, shall receive a single payment of not more than $160,

regardless of the number of times that a Class Member may have appeared within the data

received by the Bank from the DHSMV between May 1, 2000 and September 30, 2003.

b.      In no event shall the Bank be required to pay more than Fifty Million U.S. Dollars

($50,000,000.00) (the "<u>Maximum Amount</u>") in the aggregate in respect of the sum of (1) all

amounts paid to Claimants under Section 4(a) hereof, (2) all amounts paid to the Named

Plaintiffs under Section 6(b) hereof, (3) all Administrative Expenses necessary to implement this

agreement, and (4) the Maximum Attorneys' Fees (as defined at Section 6(a) herein).  In the

8

event that the Settlement Administrator determines that the aggregate amount proposed to be received by all Claimants under Sections 4(a) plus the amounts paid to the Named Plaintiffs under Section 6(b), the Administrative Expenses, and the Maximum Attorneys' Fees would exceed the Maximum Amount, then each Claimant shall not receive $160 and shall instead receive an amount equal to his or her pro rata share (based on the number of Claimants who have submitted Timely and Documented Claims) of the following difference:  the Maximum Amount less the amounts paid under Section 6(b), all Administrative Expenses, and the Maximum Attorneys' Fees.

c.      The Settlement Administrator shall be responsible for administering the settlement provided in this Agreement and for giving individual notice to all potential members of the Plaintiff Class as required by Section 15.  The cost for the Bank to retain the Settlement Administrator to perform all tasks assigned to it under the terms of this Agreement shall be included under the Administrative Expenses defined in Section 2.0 hereof.

d.      The settlement compensation set forth in Section 4(a) will be distributed by the Settlement Administrator within ninety (90) days after the Effective Date (as defined in Section 13).  Such deadline for distributing the settlement compensation shall be referred to as the "Payment Deadline."

e.      Any Class Member who does not submit a Timely and Documented Claim shall not be entitled to the compensation identified in Section 4(a) and, notwithstanding the release and dismissal of Settled Claims, the Bank shall not be required to make any payment to any Class Member who does not return a Timely and Documented Claim.

f.      [Reserved]

g.      Plaintiffs' Counsel or the Bank, at their own expense, shall have the right to verify the accuracy of any determination made by the Settlement Administrator as to the eligibility of a

9

particular Responding Person to compensation hereunder and/or the amount of that compensation. The right to verify the accuracy of any determination made by the Settlement Administrator as to the eligibility of a particular Responding Person to compensation and the amount of that payment shall terminate on the fifth business day prior to the Payment Deadline. If the Bank determines that a submitted Claim Form is inaccurate, it will so advise the Settlement Administrator and Plaintiffs' Counsel in writing, and the Settlement Administrator shall not pay the applicable Responding Person at that point in time and shall follow the procedure set forth in Section 4(h) below.

h.       The Settlement Administrator shall disallow any Claim Form that is not completed in full or signed by the Claimant. Further, the Settlement Administrator shall disallow any Claim Form if the Claimant is not listed on the data provided by Plaintiffs' Counsel to the Settlement Administrator. If any Claim Form submitted by a Responding Person is disallowed in whole or in part for failure to satisfy the requirements enumerated herein or in the Claim Form or because the Bank has advised the Settlement Administrator that such Claim Form is inaccurate, or because the Claimant is not listed on the data provided by Plaintiffs' Counsel to the Settlement Administrator, the Settlement Administrator shall request the Responding Person to cure such defects in the Claim Form or to submit such supporting documents as may be necessary to verify the accuracy and completeness of the claim by such Responding Person ("Request to Cure"). The Settlement Administrator shall mail all Requests to Cure at least sixty (60) days prior to the Payment Deadline. A Responding Person shall have thirty (30) days after mailing of such Request to Cure to respond to the Request to Cure or to explain why substantial compliance with the Request to Cure cannot be made. Any such response must actually be received by the Settlement Administrator within such thirty (30) day period. Failure to respond to such Request to Cure within thirty (30) days of mailing shall constitute consent on the part of such Responding Person to disallowance of the claim or to such part of the claim to which the Request to Cure relates. If after receipt of a Responding Person's response to a Request to Cure,

10

the Settlement Administrator determines that a submitted claim should still be disallowed, is inaccurate or conflicts with the Bank's records, in whole or in part, then, no later than ten (10) days prior to the Payment Deadline, the Settlement Administrator shall notify such Responding Person by first class mail (with a copy to Plaintiffs' Counsel) (a) that the claim has been finally disallowed in whole or in part; and (b) of the reason or reasons for such disallowance (the "Notice of Disallowance").  If Plaintiffs' Counsel, the Bank or a Responding Person contests the Settlement Administrator's determination, the contesting party shall submit the matter to the Court for summary and non-appealable resolution of the matter.

### Section 5.      Additional Duties of Settlement Administrator

In addition to the tasks set forth in other Sections of this Agreement, the Settlement Administrator will also:

a.      coordinate, inform and communicate orally and in writing with counsel for the Parties concerning mailing of notices, information received from the Class Members and responses thereto, and provision of monetary relief to the Claimants;

b.      prepare, process and mail the Class Notice, Claim Form and settlement checks to potential Class Members and Claimants;

c.      establish a toll-free number to provide information to Class Members about the background of the Litigation, the proposed settlement, the Class Notice, the Claim Form, and procedures for obtaining monetary relief;

d.      receive, respond to and maintain any written or electronic correspondence from Class Members or Claimants correspondence regarding requests for exclusion, intervention, objections and inquiries relating to the settlement, and maintaining records of responses thereto;

e.      prepare affidavits, certifications and/or provide testimony at the hearing in connection with the entry of the Final Order and Judgment; and

f.     maintain the records above and all information provided to the Settlement Administrator in connection with this settlement, including cancelled checks, in a confidential, safe location, with monitored and restricted access for seven (7) years after the Effective Date of this settlement.  Thereafter, the records shall be destroyed.

### Section 6.     Attorneys' Fees and Costs; Named Plaintiffs' Consideration

a.     Within 10 days after the Effective Date of this Agreement, the Bank shall pay to Plaintiffs' Counsel:  (1) the lesser of (i) the amount of attorneys' fees awarded by the Court to Plaintiffs' Counsel or (ii) $10,000,000, plus (2) the amount of costs awarded by the Court, not to exceed $120,000 (such sum defined as the "Maximum Attorneys' Fees").  The Bank will not object to Plaintiffs' Counsel applying to the Court for, and receiving, an award of attorneys' fees in an amount not to exceed $10,000,000.  The Bank will not object to Plaintiffs' Counsel applying to the Court for, and receiving, an award of reasonable out-of pocket litigation expenses that it can demonstrate to the Court, not to exceed $120,000.  Subject to the ceilings set forth in this subsection, the Bank shall support Plaintiffs' Counsel's claim for attorneys' fees and costs and acknowledges that such amounts are reasonable and appropriate.  Plaintiffs' Counsel shall provide wire instructions in writing to the Bank's Counsel within 3 days after the Effective Date to transmit the fees.  Plaintiffs' Counsel represent that they did not begin discussions on the subject of their fees and costs until after the Parties had reached a tentative oral agreement, subject to agreement on all terms in writing, on all relief for the Plaintiff Class under the settlement provided herein.

b.     Within 10 days after the Effective Date of this Agreement, the Bank shall pay no more than:  $10,000 to plaintiff James Kehoe, $3,000 to plaintiff Timothy Neilsen, and $3,000 to plaintiff Timothy G. Martin, or such lesser amounts awarded by the Court, as an incentive award for their participation as class representatives in the Litigation.  No later than 30 days prior to the Effective Date of this Agreement, each Named Plaintiff shall complete a W-9 form and provide the completed form to the Bank's Counsel or the Settlement Administrator.  Payment for the

Named Plaintiffs' incentive award shall be remitted to Roger Slade, Esq., on behalf of James Kehoe, and to Paul Geller, Esq., on behalf of Timothy Neilsen and Timothy G. Martin.

      c.      The effectiveness of this Agreement shall not be conditioned upon or delayed by the Court's failure to approve the payments described in Sections 6(a) and 6(b) above. Except as provided in Section 6(a), each party shall bear its own attorneys' fees, costs, and expenses incurred in the prosecution, defense, or settlement of the Litigation and, specifically, without limitation, the Bank shall bear no court costs. The Named Plaintiffs and Plaintiffs' Counsel shall not seek any further award of attorneys' fees, costs or expenses in the Litigation from any sums to be paid to members of the Plaintiff Class.

**Section 7.**      <u>**Releases**</u>

      a.      On the Effective Date, in exchange for the Bank's agreement to make available the settlement compensation for distribution pursuant to the terms and conditions of this Agreement, to enter into certain injunctive relief, and for other good and valuable consideration, the Named Plaintiffs, on their own behalf and on behalf of each member of the Plaintiff Class who has not opted out (as explained in Section 10), and whether or not the Class Member has filed a Timely and Documented Claim, by operation of this release and the judgment set forth in the Final Order and Judgment, hereby do and shall be deemed to have fully, finally and forever released, settled, compromised, relinquished, and discharged the Released Persons of and from any and all Settled Claims and, without further action by any person or the Court, they will be deemed (i) to have consented to dismiss with prejudice the Litigation and any and all Settled Claims, (ii) to have released and forever discharged each and every Settled Claim; and (iii) will be forever barred and enjoined from instituting or further prosecuting, in any forum whatsoever, including but not limited to any state, federal, or foreign court, each and every Settled Claim.

      b.      The Named Plaintiffs, on their own behalf and on behalf of each member of the Plaintiff Class who has not opted out (as explained in Section 10), and whether or not the Class

Member has filed a Timely and Documented Claim, acknowledge that they are aware that they may hereafter discover material or immaterial facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Release, but it is their intention to, and they do hereby, upon the Effective Date of this Agreement, fully, finally and forever settle and release the Released Persons from any and all Settled Claims, known or unknown, suspected or unsuspected, contingent or matured, which now exist, may hereafter exist, or may heretofore have existed, without regard to the subsequent discovery or existence of such different or additional facts.

   c. Subject to Court approval, each and every Class Member who does not opt out (as explained in Section 10) shall be bound by this Agreement and all Settled Claims shall be dismissed with prejudice and released even if they never received actual notice of the Litigation or its settlement in the form of the Class Notice or otherwise, and the releases contained in Sections 7(a) and (b) shall apply to and bind all members of the Plaintiff Class who do not opt out, including those members of the Plaintiff Class whose Class Notices are returned as undeliverable and those for whom no current address can be found.

   d. Subject to Court approval, each and every Class Member (including those who opt out) hereby releases the Parties, the Released Persons, the Bank's Counsel (including any consultants they retained to assist them with this Litigation) (such persons, collectively, the "Data Released Persons"), and the Settlement Administrator from any and all claims, demands, actions, causes of action, rights, offsets, suits, damages, lawsuits, liens, losses or liabilities of any kind whatsoever, in law or in equity, including monetary, injunctive or declaratory relief, whether known or unknown, alleged or not alleged, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, which such Class Member has had, now has, or may have in the future, arising from or connected in any way with obtaining, using and/or disclosing the Class Member's personal information in connection with implementation of the terms of this Agreement, including but not limited to, all action taken

14

in connection with the mailing of the Class Notices to the Class Members as provided in this Agreement, and the distribution to the Class Members of the settlement compensation in accordance with this Agreement (all of the foregoing claims, demands, etc., collectively, the "Data Released Claims").

**Section 8.** **Permanent Injunctive Relief.** Subject to, and conditional upon, the Court's entering the Final Order and Judgment approving the Agreement and the settlement contemplated hereby, the Bank agrees and stipulates to a permanent injunction incorporated into the Court's Final Order and Judgment, which injunction shall provide:

a.     The Bank shall certify in writing and under oath to Plaintiffs' Counsel no less than five days prior to the final hearing date that it did not keep or maintain any data it may have obtained from motor vehicle records which the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003;

b.     The Bank shall not disclose any data it may have obtained from motor vehicle records which the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003;

c.     The Bank shall not sell any data obtained from the motor vehicle records which the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003; and

d.     The Bank shall certify in writing and under oath to Plaintiffs' Counsel no less than five days prior to the final hearing date that it and its agents and contractors have destroyed all Class Member records obtained from DHSMV or certify that it no longer has any such records in its possession.  The Bank will agree to a privacy audit (conducted by a "Data Auditor") to be completed within six months of the entry of the Final Oder and Judgment with respect to Class Member records provided to the Bank by DHSMV, and will use reasonable efforts to assist in the effort to conduct a privacy audit of its contractor, The Bureau, Inc., to be

15

completed within six months of the entry of the Final Oder and Judgment. The total audit costs, which shall be included in the Administrative Expenses, shall not exceed $25,000.

### Section 9.      Preliminary Approval Order

Within ten (10) days following the execution of this Agreement by the Parties, the Named Plaintiffs shall move the Court in the pending Litigation for a Preliminary Approval Order that accomplishes the following:

a.      Conditionally certifying the Plaintiff Class under Rule 23 of the Federal Rules of Civil Procedures for settlement purposes only;

b.      Preliminarily approving this Agreement as fair, reasonable and adequate under Rule 23 of the Federal Rules of Civil Procedure;

c.      Approving a form of Class Notice substantially in the form of Exhibit A to be sent to all potential Class Members;

d.      Directing the Settlement Administrator to mail the Class Notice, within 45 days of the entry by the Court of the Preliminary Approval Order, to the potential Class Members by first class mail to the last known address of such potential Class Members set forth on a list to be provided by Plaintiffs' Counsel to the Settlement Administrator;

e.      Directing the publication of a notice substantially in the form of Exhibit E attached hereto and made a part hereof for two consecutive dates in the following newspapers: *Palm Beach Post*, *Port St. Lucie Post*, *Ft. Lauderdale Sun-Sentinel*, *Miami Herald* (Broward edition) and *Vero Beach Press Sentinel* within 10 days after mailing of the class notices. As part of the Administrative Expenses, the Bank shall pay the costs associated with these publications;

f.      Scheduling a Court hearing on final approval of this Agreement;

16

g.      Establishing a procedure for members of the Plaintiff Class to opt out and setting a date, not later than 45 days before the date of the Court hearing on final approval of this Agreement, after which no member of the Plaintiff Class shall be allowed to opt out of the Plaintiff Class;

h.      Establishing a procedure for Class Members to object to the settlement;

i.      Approving a Claim Form for distribution to potential Class Members and setting a date after which submitted Claim Forms shall be deemed untimely;

j.      Confirming that none of the Parties, Released Persons, the Data Auditor, the Bank's Counsel (including their consultants), the Plaintiffs' Counsel, or the Settlement Administrator, nor their agents or representatives, shall be in violation of any state or federal law, including the DPPA, for obtaining, using or disclosing the data the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003 or the data obtained from the DHSMV during discovery proceedings in the Litigation in connection with implementation of this settlement; and

k.      Containing such other and further provisions consistent with the terms and provisions of this Agreement as the Court may deem appropriate.

**Section 10.      Opt-Outs and Objections By Class Members**

a.      <u>Procedure for Opt Outs</u>.  Any requests to opt out must be in writing and must include the name, address and telephone number of the person seeking to opt out and a statement that the person wishes to opt out of the Plaintiff Class.  The opt out request must be personally signed by the Class Member who seeks to opt out; no Class Member may opt out by having a request to opt out submitted by an actual or purported agent or attorney acting on behalf of the Class Member.  No opt out request may be made on behalf of a group of Class Members.  Each Class Member who does not submit an opt out request substantially in compliance with this

17

Section 10(a) on or prior to the date forty-five (45) days before the Court hearing date for final approval on this Agreement shall be included in the Plaintiff Class and deemed to participate in the settlement and release provided in this Agreement.  For purposes of determining timeliness, an opt out request shall be deemed to have been submitted when received by the Settlement Administrator.  The original opt out request(s) must be sent to and maintained by the Settlement Administrator.  The Settlement Administrator shall provide copies to Plaintiffs' Counsel and the Bank's Counsel.

      b.     <u>Effect of Opt Outs by Class Members</u>.  It is estimated that there are 565,600 Class Members.  If Five Percent (5%) or more of the members of the Plaintiff Class, or 28,280 Class Members, whichever is fewer, opt out of the Plaintiff Class, then the Bank shall have the option to rescind this Agreement, in which case all of the Bank's obligations under this Agreement shall cease to be of any force and effect, and this Agreement shall be rescinded, canceled, and annulled.  If the Bank exercises this option, the parties shall return to their respective positions in the Litigation as if the Parties had not entered into this Agreement.  In addition, in such event, the Agreement and all negotiations, court orders and proceedings relating thereto shall be without prejudice to the rights of any and all parties hereto, and evidence relating to the Agreement and all negotiations shall not be admissible or discoverable in the Litigation or otherwise.

      c.     <u>Procedure for Objections to Settlement</u>.  Class Members who wish to object to the settlement provided in this Agreement or the award of attorneys' fees and reimbursement of costs and expenses must file a notice of objection, including any supporting papers (hereinafter collectively referred to as the "<u>Notice of Objection</u>"), with the U.S. District Court for the Southern District of Florida, on or prior to the date that is thirty (30) days prior to the final hearing date for approval of this Agreement.  For purposes of determining timeliness, a Notice of Objection shall be deemed to have been submitted when received and filed by the Clerk of Court of the U.S. District Court for the Southern District of Florida.  Copies of the Notice of Objection

18

must also be mailed to the following on or prior to the date thirty (30) days before said final hearing date:  Roger Slade, Esq., Pathman Lewis LLP, One South Biscayne Tower, 2 S. Biscayne Blvd., Miami, FL  33131 and Paul J. Geller, Esq., Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 197 S. Federal Highway, Suite 200, Boca Raton, Florida 33432, on behalf of Plaintiffs; and L. Louis Mrachek, Esq., Page, Mrachek, Fitzgerald & Rose, P.A., 505 S. Flagler Drive, Suite 600, West Palm Beach, FL  33401, on behalf of the Bank.  Attendance at the settlement hearing is not necessary.  Class Members wishing their objections to be heard orally should indicate in their Notice of Objection their intention to appear at the settlement hearing. Such Class Members must include in their Notice of Objection the basis for the objection(s) and the identity of witnesses they may call to testify and exhibits they intend to introduce into evidence at the settlement hearing.  Class Members do not need to appear at the settlement hearing or take any other action to indicate their approval.  Any Class Member who does not make his or her objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the proposed settlement or any other provision of this Agreement.

### Section 11.    Final Approval Order And Judgment

At or before the hearing for final approval of this Agreement, the Named Plaintiffs and the Bank shall move the Court for a Final Order and Judgment that accomplishes the following:

a.    Determines whether this Agreement is fair, just, equitable, reasonable, adequate and in the best interest of the Plaintiff Class.

b.    Requires the Parties to carry out the provisions of this Agreement.

c.    Causes the Court to enter a judgment in the Litigation which will:

(i)      dismiss all claims against the Bank in the Litigation with prejudice on behalf of the Named Plaintiffs and members of the Plaintiff Class who have not opted out;

(ii)      declare that the Named Plaintiffs and members of the Plaintiff Class who have not opted out are bound by the Releases set forth in Section 7 of this Agreement;

(iii)      enjoin the Named Plaintiffs and all members of the Plaintiff Class who have not opted out from prosecuting any Settled Claims against the Released Persons;

(iv)      declare that the Named Plaintiffs and members of the Plaintiff Class (excluding those who have opted out) are bound by the Release set forth in Section 7(d) of this Agreement;

(v)      enjoin the Named Plaintiffs and members of the Plaintiff Class (excluding those who have opted out) from prosecuting any claims listed in Section 7(d) against the Released Persons described in Section 7(d);

(vi)      reserve continuing jurisdiction over the construction, interpretation, implementation and enforcement of this Agreement and over the administration and distribution of settlement benefits;

(vii)      declare that neither the Parties, Released Persons, the Settlement Administrator or their agents, employees, attorneys or any one acting on their behalves, have violated federal or state law, including the DPPA, in any way in obtaining, using or disclosing the data that the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003 or the data obtained from the

DHSMV during discovery proceedings in the Litigation to implement the terms of this Agreement;

(viii)   declare that the parties have complied with the requirements of the Class Action Fairness Act; and

(ix)   enjoin the Bank from certain actions as set forth in Section 8 hereof.

**Section 12.   Certifications To The Court**

a.   At or before the hearing on final Approval of this Agreement, the Settlement Administrator shall file with the Court in the Litigation a declaration verifying that (i) the Court-approved Class Notices have been sent, by first class mail, as described in Sections 9(c) and 9(d), and (ii) the Court-approved Claim Form has been enclosed with each Class Notice.

b.   At or before the hearing on final Approval of this Agreement, the Settlement Administrator shall file with the Court a declaration verifying that the Settlement Administrator has complied with the procedures described in Section 15(a) with respect to all Class Notices.

**Section 13.   Effectiveness of Settlement Agreement**

The "Effective Date" of this Agreement shall be the date when all of the following conditions have been satisfied; provided that the Bank has not exercised its option under Section 10(b) to rescind this Agreement:

a.   This Agreement has been signed by the Named Plaintiffs, Plaintiffs' Counsel, and the Bank;

b.      A Preliminary Approval Order has been entered by the Court granting preliminary approval of this Agreement, and approving a form of Class Notice as provided in Sections 9(b) and 9(c);

c.      The Court-approved Class Notices have been duly mailed to the Class Members as ordered by the Court in the Litigation;

d.      The Court has entered a Final Order and Judgment finally approving this Agreement upon the terms of Section 11(a) and (b);

e.      The Court has entered a judgment in the Litigation upon the terms of Section 11(c);

f.      The Final Order and Judgment has become final because of the expiration of the time for appeals therefrom without any appeal having been taken or, if review of the Final Order and Judgment, or any portion thereof, is sought by any person, the date on which the matter is finally resolved by the highest court to which such review is taken; and

g.      The acquisition of the Bank and its parent company by National City Corporation has been consummated.

**Section 14.    Failure of Condition**

If, for any reason (including by reason of the Bank's election to exercise its right of rescission under Section 10(b)), this Agreement fails to become effective pursuant to Section 13, the orders, judgment, and dismissal to be entered pursuant to this Agreement shall be vacated, the Parties will be restored to their respective positions prior to entering into this Agreement, and the Parties' rights and obligations with respect to the use of this Agreement and the settlement provided herein will be as set forth in Section 19(n) hereof.

**Section 15.    Class Notice Forms**

22

a.      Plaintiffs' Counsel will provide a list of all potential Class Members to the Settlement Administrator.  Prior to mailing, the Settlement Administrator (or one or more of its agents, employees or consultants) will update each address by comparing each address with the current address in the United States Postal Service's National Change of Address database.  If a Class Notice is returned, the Settlement Administrator shall re-mail such Class Notice if it is provided with a new address.  If not, then the Settlement Administrator shall attempt to locate a new address for the returned mailing to re-mail such Notice by consulting with the Transunion Address database.  Neither the Bank nor the Settlement Administrator shall have any further obligations to attempt to locate Class Members or send Class Notices to potential members of the Plaintiff Class.  Neither the Parties nor their representatives shall otherwise use the list, the data the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003, or the data obtained from DHSMV during discovery in the Litigation to initiate any further communication with the Plaintiff Class or any Class Member.

b.      Subject to Court approval, all members of the Plaintiff Class who do not opt out in accordance with Section 10(a) shall be bound by this Agreement and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Litigation or its settlement.

**Section 16.      Notices**

a.      The Bank and Plaintiffs' Counsel shall have the right to approve all Claim Forms, which approval shall not be unreasonably withheld, conditioned or delayed, prior to their distribution to potential members of the Plaintiff Class.  The Bank and Plaintiffs' Counsel acknowledge that they have already approved the form attached as Exhibit B to this Agreement.

b.      All letters, notices, requests, demands, and other communications required or permitted to be given to the Parties hereto pursuant to this Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first class mail to the Parties, care of

23

their respective counsel of record, except that the Class Notices and Claim Forms shall be sent directly to the potential Class Members as provided in this Agreement.

### Section 17.    Class Action Fairness Act

a.      Not later than 10 days after this proposed settlement is filed in the Court, the Bank shall serve notice of the settlement on the appropriate State official of the State of Florida, and the appropriate Federal official, as defined in the Class Action Fairness Act, 28 U.S.C. § 1715.

b.      The notice shall contain:  (1) copies of the complaints and any materials filed with the complaints and any amended complaints in the Litigation, or notice of how to electronically access such materials over the internet; (2) notice of any scheduled judicial hearing in the Litigation; (3) the proposed notification to Class Members, including notice of the Class Members' right to request exclusion from the class action and notice of the proposed settlement of the class action; (4) the proposed settlement; (5) any settlement or other agreement contemporaneously made between Plaintiffs' Counsel and counsel for the Bank; (6) any final judgment or notice of dismissal; (7) if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official, or if not feasible, an estimate of the number of class members residing in each State in which such class members reside, and an estimated proportionate share of such members to the entire settlement; and (8) any written judicial opinion relating to the materials described in subparagraphs (3) through (6) of this section.

c.      The Bank shall file with the Court a certification of the date upon which it served notice upon the Appropriate Federal Official and the Appropriate State Official of the State of Florida.

d.      The Court's final order shall not issue earlier than 90 days after the later of the

dates on which the appropriate Federal official and the appropriate State official are served with

the notice described in subsection 17(b) above.

**Section 18.       No Other Actions Or Potential Claims**

a.      The Named Plaintiffs and Plaintiffs' Counsel represent and warrant that there is,

to their knowledge, no other action pending (other than the Litigation) against any Released

Person relating to the Settled Claims.  It is the intention of all Parties and attorneys signing this

Agreement that any such other actions by the Named Plaintiffs and Class Members against any

Released Person (other than one brought by a Class Member who timely opts out of the Plaintiff

Class, except as provided in the Final Order and Judgment) shall be dismissed with prejudice on

proper notice and motion made by the Released Persons; provided, however, that the Class

Notice shall inform potential Class Members of this provision.

b.      The Named Plaintiffs and Plaintiffs' Counsel represent and warrant that they are

not aware of any potential claims by anyone against any Released Persons relating to the Settled

Claims, other than the Settled Claims.  It is the intention of all Parties and attorneys signing this

Agreement that any Settled Claims (other than claims by a Class Member who timely opts out of

the Plaintiff Class, except as provided in the Final Order and Judgment), shall be released and

discharged under the provisions of Section 7 above.

**Section 19.       General Provisions**

a.      Entire Agreement.  This Agreement constitutes the full, complete and entire

understanding, agreement and arrangement of and between the Parties with respect to the

settlement of the Litigation and the Settled Claims against the Released Persons.  This

Agreement supersedes any and all prior oral or written understandings, agreements, and

arrangements between the Parties with respect to the settlement of the Litigation and the Settled

Claims against the Released Persons.  Except those set forth expressly in this Agreement, there are no other agreements, covenants, promises, representations or arrangements between the Parties with respect to the settlement of the Litigation and the Settled Claims against the Released Persons.

      b.     <u>Modification in Writing</u>.  This Agreement may be altered, amended, modified or waived, in whole or in part, only in a writing signed by all Parties to this Agreement.  This Agreement may not be amended, altered, modified or waived, in whole or in part, orally.

      c.     <u>Ongoing Cooperation</u>.  The Parties hereto shall execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.  The executing of documents must take place prior to the date scheduled for the Court hearing on final approval of this Agreement.

      d.     <u>Triplicate Originals/Execution in Counterpart/ Facsimiles</u>.  All Parties and Counsel shall sign three copies of this Agreement, either manually or via facsimile transmission of signatures, each of which shall be considered an original.  This Agreement may be signed in one or more counterparts.

      e.     <u>No Reliance</u>.  Each party to this Agreement warrants that he, she or it is acting upon his, her, or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Agreement.

      f.     <u>Governing Law</u>.  This Agreement shall be interpreted, construed, enforced, and administered in accordance with the laws of Florida, without regard to conflict of laws rules.  This Agreement shall be enforced solely in the United States District Court for the Southern District of Florida.  The Bank, the Named Plaintiffs and the Class Members waive any objection that each such party may now have or hereafter have to the venue of such suit, action, or

proceeding and irrevocably consent to the jurisdiction of this Court in any such suit, action or proceeding to enforce the terms of this Agreement, and agree to accept and acknowledge service of any and all process which may be served in any such suit, action or proceeding to enforce the terms of this Agreement, except as otherwise set forth herein.

g.    No Publicity.  The Named Plaintiffs and Plaintiffs' Counsel will not disclose or transmit or cause, authorize, or permit anyone to disclose or transmit any information concerning this specific settlement (including to members of the media), except that the Plaintiffs' Counsel may (i) present this Agreement to the Court for approval; (ii) discuss this Agreement and the settlement provided herein with attorneys of record in other cases alleging violations of the DPPA in which Plaintiffs' Counsel acts as class counsel; and (iii) transmit to the Internal Revenue Service and relevant state tax authorities information about the payment of monies in accordance with this Agreement. The Named Plaintiffs and Plaintiffs' Counsel will not at any time issue any press release about this specific settlement, will not send a copy of this specific Agreement or any written summary of its terms to any publication or other media, and will not post or publish any information about the Litigation or the specific settlement thereof on the Internet, World Wide Web or on any electronic billboard or messaging system.  If any person or member of the media should contact Named Plaintiffs or Plaintiffs' Counsel regarding the Litigation or the settlement thereof, Named Plaintiffs or Plaintiffs' Counsel must respond and acknowledge that the Bank is settling this matter to avoid the cost and expense of litigation, that the Bank denies any liability in this matter, and that no liability has been proven as to the Bank. This paragraph shall not prohibit Plaintiffs' Counsel from responding to an inquiry from a potential Class Member concerning the Class Member's rights and options under the terms of this Agreement, nor shall it prohibit Plaintiffs' Counsel from publishing a summary description of the settlement in connection with attorney biographies on the internet or elsewhere.

h.   <u>Reservation of Jurisdiction</u>.  Notwithstanding the dismissal of this action and entry of final judgment, the Court shall retain jurisdiction for purposes of interpreting and enforcing the terms of this Agreement, as necessary.

i.   <u>Binding on Successors</u>.  This Agreement shall be binding and shall inure to the benefit of the Parties and their respective successors, assigns, executors, administrators, heirs and legal representatives.

j.   <u>Mutual Preparation</u>.  This Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

k.   <u>Gender Neutrality</u>.  All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders, and the singular shall include the plural and vice versa.

l.   <u>Taxes</u>.  All Class Members shall be responsible for paying any and all federal, state and local taxes due on the payments made to them pursuant to the settlement provided herein.

m.   <u>No Other Financial Obligations on Released Persons</u>.  Released Persons shall not be liable or obligated to pay any fees, expenses, costs or disbursements to the Named Plaintiffs, Plaintiffs' Counsel or Class Members, either directly or indirectly, in connection with the Litigation or this Agreement, other than the amounts expressly provided for herein.

n.   <u>Use of Settlement</u>.  Nothing in this Agreement, nor in any negotiations, statements or court proceedings relating to them in any way, shall be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Litigation, any other action or in any judicial, administrative, regulatory or other proceedings, except in a proceeding to enforce

the terms of this Agreement; provided however, nothing herein shall prevent the Bank, its parent company, or its affiliates from sharing this Agreement with federal bank regulators. Without limiting the foregoing, neither this Agreement, nor any related negotiations, statements or court proceedings, shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to the Bank, or as a waiver by the Bank of any applicable defense, including without limitation any applicable statute of limitations or statute of frauds, or as a waiver by Named Plaintiffs or Plaintiff Class of any claims, causes of action or remedies.

     o.    <u>Recitals Incorporated by Reference</u>. The Recitals are hereby incorporated by reference as part of the Agreement between the Parties.

     p.    <u>Court Filings.</u> No Party shall file any materials with the Court in support of the settlement that are inconsistent with the terms of the settlement agreement.

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this Agreement to be executed as of this 21st day of July , 2006.

PLAINTIFFS:

JAMES KEHOE

Dated: _____, 2006

James Kehoe, on his own behalf and on behalf of the Plaintiff Class

TIMOTHY NIELSEN

Dated: _____, 2006

Timothy Nielsen, on his own behalf and on behalf of the Plaintiff Class

TIMOTHY G. MARTIN

Dated: _____, 2006

Timothy G. Martin, on his own behalf and on behalf of the Plaintiff Class

29

the terms of this Agreement; provided however, nothing herein shall prevent the Bank, its parent company, or its affiliates from sharing this Agreement with federal bank regulators. Without limiting the foregoing, neither this Agreement, nor any related negotiations, statements or court proceedings, shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to the Bank, or as a waiver by the Bank of any applicable defense, including without limitation any applicable statute of limitations or statute of frauds, or as a waiver by Named Plaintiffs or Plaintiff Class of any claims, causes of action or remedies.

     o.    <u>Recitals Incorporated by Reference</u>. The Recitals are hereby incorporated by reference as part of the Agreement between the Parties.

     p.    <u>Court Filings.</u> No Party shall file any materials with the Court in support of the settlement that are inconsistent with the terms of the settlement agreement.

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this Agreement to be executed as of this 21st day of July , 2006.

PLAINTIFFS:

JAMES KEHOE

Dated: _____, 2006

_____
James Kehoe, on his own behalf and on behalf of the Plaintiff Class

TIMOTHY NIELSEN

Dated: July  21 , 2006

_____
Timothy Nielsen, on his own behalf and on behalf of the Plaintiff Class

TIMOTHY G. MARTIN

Dated: _____, 2006

_____
Timothy G. Martin, on his own behalf and on behalf of the Plaintiff Class

29

the terms of this Agreement; provided however, nothing herein shall prevent the Bank, its parent company, or its affiliates from sharing this Agreement with federal bank regulators. Without limiting the foregoing, neither this Agreement, nor any related negotiations, statements or court proceedings, shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to the Bank, or as a waiver by the Bank of any applicable defense, including without limitation any applicable statute of limitations or statute of frauds, or as a waiver by Named Plaintiffs or Plaintiff Class of any claims, causes of action or remedies.

     o.    <u>Recitals Incorporated by Reference</u>. The Recitals are hereby incorporated by reference as part of the Agreement between the Parties.

     p.    <u>Court Filings.</u> No Party shall file any materials with the Court in support of the settlement that are inconsistent with the terms of the settlement agreement.

     IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this Agreement to be executed as of this 21st day of July , 2006.

PLAINTIFFS:

JAMES KEHOE

Dated: _____, 2006

_____
James Kehoe, on his own behalf and on behalf of the Plaintiff Class

TIMOTHY NIELSEN

Dated: _____, 2006

_____
Timothy Nielsen, on his own behalf and on behalf of the Plaintiff Class

TIMOTHY G. MARTIN

Dated: 7/21/06 , 2006

_____
Timothy G. Martin, on his own behalf and on behalf of the Plaintiff Class

29

FIDELITY FEDERAL BANK AND TRUST

Dated: _____7-26_____, 2006

By: _____
Title:___Chairman/CEO_____

30

Dated: _July 21_ , 2006

Attorneys for Plaintiffs
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS

By: _____
Its: ___PARTNER_____

PATHMAN LEWIS, LLP

Dated: _____, 2006

By:_____
Its:_____

ARONOVITZ TRIAL LAWYERS

Dated: _____, 2006

By:_____
Its: _____

JAMES HOYER NEWCOMER &
SMILIANICH, P.A.

Dated: _____, 2006

By:_____
Its: _____

Attorneys for Plaintiffs
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS

Dated: _____, 2006

By: _____
Its: _____

PATHMAN LEWIS, LLP

Dated: July 21, 2006

By: _____  ROGER SLADE
Its: _____

ARONOVITZ TRIAL LAWYERS

Dated: _____, 2006

By: _____
Its: _____

JAMES HOYER NEWCOMER &
SMILIANICH, P.A.

Dated: _____, 2006

By: _____
Its: _____

31

Attorneys for Plaintiffs
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS

Dated: _____, 2006

By:_____
Its: _____

PATHMAN LEWIS, LLP

Dated: _____, 2006

By:_____
Its:_____

ARONOVITZ TRIAL LAWYERS

Dated: __7/27__, 2006

By:_____
Its: _Preisident_____

JAMES HOYER NEWCOMER &
SMILIANICH, P.A.

Dated: _____, 2006

By:_____
Its: _____

31

Attorneys for Plaintiffs
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS

Dated: _____, 2006          By:_____
                                        Its: _____

PATHMAN LEWIS, LLP

Dated: _____, 2006          By:_____
                                        Its:_____

ARONOVITZ TRIAL LAWYERS

Dated: _____, 2006          By:_____
                                        Its: _____

JAMES HOYER NEWCOMER &
SMILIANICH, P.A.

Dated: _____, 2006          By:_____
                                        Its: Shareholder

31

<u>EXHIBITS</u>

Exhibit A – Class Notice

Exhibit B – Claim Form

Exhibit C – Final Order and Judgment

Exhibit D – Preliminary Approval Order

Exhibit E – Publication Notice

# EXHIBIT A

## NOTICE OF CLASS ACTION SETTLEMENT

**Kehoe v. Fidelity Federal Bank and Trust,**
**Case No. 03-80593-CIV-HURLEY**
**U.S. District Court for the Southern District of Florida**

**and**

**Nielsen et al. v. Fidelity Federal Bank and Trust,**
**Case No. 06-80557-CIV-HURLEY**
**U.S. District Court for the Southern District of Florida**

### THIS IS **NOT** A NOTICE OF A LAWSUIT AGAINST YOU.  READ THIS NOTICE CAREFULLY.  YOUR LEGAL RIGHTS MAY BE AFFECTED.

- A settlement has been proposed in two class action lawsuits concerning the State of Florida Department of Highway Safety and Motor Vehicles' disclosure of personal information in motor vehicle records to Fidelity Federal Bank and Trust between May 1, 2000 and September 30, 2003.

- The parent company of Fidelity Federal Bank and Trust intends to be acquired by National City Corporation, a bank holding company headquartered in Cleveland, Ohio. This settlement is contingent on the successful completion of that acquisition.

- The settlement will provide a payment (of a pro rata share of the total settlement fund amount, not to exceed $160) to anyone whose personal information contained in the motor vehicle records of the State of Florida Department of Highway Safety and Motor Vehicles was provided to Fidelity Federal Bank and Trust between May 1, 2000 and September 30, 2003.  If you qualify, you may send in a Claim Form to receive the payment, or exclude yourself from the settlement, or object to it.

- This settlement resolves these lawsuits.  It avoids costs and risks from continuing the lawsuits; provides payment to persons who qualify; and releases Fidelity Federal Bank and Trust and its successors from liability.

- Court-approved lawyers for the class members will ask the Court to approve the settlement, including the payment of the lawyers' fees and expenses.  Fidelity Federal Bank and Trust has agreed to pay these fees and expenses.

- The two sides disagree on whether the class members could have won at trial, and if they had won at trial, what relief they could have received.

- Your legal rights are affected whether you act or don't act.

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:

| | |
|---|---|
| **Submit a Claim Form** | The only way to receive the payment under the settlement. |
| **Exclude Yourself** | You will not receive any payment under the settlement. The only option that allows you to bring a new lawsuit against Fidelity Federal Bank and Trust about the legal claims in this case. |
| **Object** | Write to the Court about why you don't like the settlement. |

| **Go to a Hearing** | Ask to speak in court about the fairness of the settlement. |
| **Do Nothing** | You will not receive any payment and you will give up your right to sue. |

- These rights and options – **and their deadlines** – are explained in this Notice.

- The Court still has to decide whether to approve the settlement. Payment will not be made unless and until the parent company of Fidelity Federal Bank and Trust is successfully acquired by National City Corporation, <u>and</u> the Court approves the settlement and all appeals are resolved.

## BASIC INFORMATION

### Why did I get this Notice?

You may have been a person whose personal information was contained in the Florida motor vehicle records provided to Fidelity Federal Bank and Trust between May 1, 2000 and September 30, 2003.

The Court has directed that you be sent this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves the settlement, a settlement administrator approved by the Court will collect Claim Forms from persons like you so that, after objections and appeals are resolved, persons who qualify can receive the payment that the settlement provides.

This notice package explains the lawsuit, the settlement, your legal rights, available benefits, who is eligible for them, and how to get them.

The Court in charge of these cases is the Honorable Daniel T.K. Hurley, U.S. District Court for the Southern District of Florida, and the cases are *Kehoe v. Fidelity Federal Bank and Trust*, Case No. 03-80593-CIV-HURLEY and *Nielsen v. Fidelity Federal Bank and Trust*, Case No. 06-80557-CIV-HURLEY. The persons who sued are called the Plaintiffs and the bank they sued is called the Defendant.

### What are these lawsuits about?

The lawsuits claimed that between May 1, 2000 and September 30, 2003, Fidelity Federal Bank and Trust obtained and used personal information contained in the Florida motor vehicle records for unauthorized purposes without first obtaining consent of the persons affected in violation of the Driver's Privacy Protection Act. Fidelity Federal Bank and Trust denies it did anything wrong and believes it would have prevailed at trial.

### Why are these cases a class action?

In a class action, one or more persons called Class Representatives (in these cases the Class Representatives were James Kehoe, Timothy Neilsen, and Timothy G. Martin) sue for all the people who have similar claims. All these people are called a Class or Class Members. The Court decides the issues for all Class Members, except for those who exclude themselves from the Class.

**Why are there two cases?**

In this case, two lawsuits were filed with different Class Representatives. Both lawsuits made the same claims against Fidelity Federal Bank and Trust, and the Class Representatives in both cases sued on behalf of the same Class. This settlement resolves both cases.

**Why is there a settlement?**

The Court did not ultimately decide which side – Plaintiffs or Defendant – was right in either of the cases. There was no trial. Both sides agreed to the settlement to avoid the costs and risks of a trial. If there had been a trial, the Plaintiffs believe the Class Members may have gotten more if they won, but they also would have received nothing if they lost. The Class Representatives and attorneys believe that the settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT

**How do I know if I am part of this settlement?**

The Court decided that these people are Class Members: *All persons whose personal information was provided by the State of Florida Department of Highway Safety and Motor Vehicles to Fidelity Federal Bank and Trust between May 1, 2000 and September 30, 2003, except for persons employed by Fidelity Federal Bank and Trust or any of its subsidiaries, parents (or their subsidiaries) or members of the federal judiciary or within the third degree of relationship to a member of the federal judiciary, or the spouses of such persons.*

**How do I know if I can get the settlement benefits?**

You can receive the settlement payment if you are a Class Member. If this notice was addressed to you, then you may qualify for the payment and you can send in a Claim Form.

## THE SETTLEMENT BENEFITS

**What benefits does the settlement provide?**

If you qualify, you will get a payment equal to your pro rata share of the total settlement fund amount, not to exceed $160.

**How can I get the settlement payment if I qualify?**

If you wish to receive the payment, then you must send in a Claim Form by the postmark deadline. A Claim Form is attached to this notice. You may also get a Claim Form at www.noticeclass.com/FidelityDPPASettlement or by writing to the Settlement Administrator at Fidelity DPPA Settlement, P.O. Box 42506, Philadelphia PA 19101. Read the instructions carefully, fill out the Claim Form, sign it, and mail it postmarked no later than _____, **2006.**

**When would I receive my payment?**

The Court will hold a hearing on _____, **2006,** at _____ **a.m./p.m.** to decide whether to approve the settlement. If the Court does not approve the settlement, then you may not receive a payment. If the Court approves the settlement, there may be appeals. It's always uncertain whether appeals can be resolved, and to do so takes time, perhaps more

than a year.  The settlement is also contingent on the parent company of Fidelity Federal Bank and Trust being successfully acquired by National City Corporation.  Once this settlement becomes final and effective, you will receive your payment if you qualify.

**What am I giving up to get the payment or stay in the Class?**

Unless you exclude yourself, you are in the Class, which means you cannot bring a new lawsuit against Fidelity Federal Bank and Trust or its successors about the legal issues in these lawsuits.  It also means that the Court's order will apply to you and bind you even if you have objected and even if you have any other claim, lawsuit, or proceeding pending against Fidelity Federal Bank and Trust.  If you sign the Claim Form or stay in the Class without sending in a Claim Form, you will be agreeing to release Fidelity Federal Bank and Trust and others related to Fidelity Federal Bank and Trust from all legal claims that this settlement resolves.  For more details on the terms of the Release, please see the Attachment to this Notice of Class Action Settlement.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want the payment under this settlement and don't want to stay in the Class, then you must take action to get out.  This is called excluding yourself from the settlement or "opting out".  Excluding yourself is the only way you can keep the right to bring a new lawsuit against Fidelity Federal Bank and Trust or its successors, on your own, about the legal issues resolved by this settlement.  If you don't exclude yourself, you will be in this settlement and will give up any right to sue for the claims that this settlement resolves.

**How do I exclude myself from this settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Kehoe v. Fidelity Federal Bank and Trust*, Case No. 03-80593-CIV-HURLEY and *Nielsen v. Fidelity Federal Bank and Trust*, Case No. 06-80557-CIV-HURLEY.  You must mail your exclusion request and it must be received no later than _____, 2006 to:

> Fidelity DPPA Settlement
> P.O. Box 42506
> Philadelphia, PA 19101

If you request to be excluded, you will not get any payment from this settlement, so do not send in a Claim Form.  Also, if you ask to be excluded, you cannot object to the settlement.  You will not be legally bound by anything that happens in this lawsuit.  You may be able to sue or continue to sue the Defendant in the future.  If you exclude yourself from the settlement, your name will be listed in the Final Order regarding the settlement, which is a public document.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with all or some part of the settlement.

**How do I tell the Court that I object to the settlement?**

If you are a Class Member, you can object to the settlement and give reasons why you think the Court should not approve it.  The Court will consider your views.  You cannot object if you exclude yourself from the Class.  To object, you must send a letter saying that you

-4-

object to *Kehoe v. Fidelity Federal Bank and Trust*, Case No. 03-80593-CIV-HURLEY and *Nielsen v. Fidelity Federal Bank and Trust*, Case No. 06-80557-CIV-HURLEY. Be sure to include your name, address, telephone number, signature and the reasons why you object to the settlement. You must mail the objection to the following three places and it must be received by the Court no later than **[30 days prior to final hearing date], 2006**, or your objection will not be valid and will not be considered by the Court:

| **Court** | **Plaintiffs' Counsel** | **Defendant's Counsel** |
|---|---|---|
| Clerk of the Court | Roger Slade, Esq. | Lou Mrachek, Esq. |
| U.S. District Court | Pathman Lewis LLP | Page, Mrachek, Fitzgerald |
| Southern District of Florida | One South Biscayne Tower | & Rose, P.A. |
| 301 North Miami Avenue | 2 S. Biscayne Blvd. | 505 S. Flagler Drive, Suite 600 |
| Miami, FL 33128 | Miami, FL 33131 | West Palm Beach, FL 33401 |

Paul J. Geller, Esq.
Lerach Coughlin Stoia Geller
 Rudman & Robbins LLP
197 S. Federal Highway
Suite 200
Boca Raton, Florida 33432

### What's the difference between objecting and excluding myself?

Objecting means that, while you remain a member of the class, you wish to advise the Court that you don't like something in the settlement and don't think it should be approved. Excluding yourself means telling the Court you don't want to be part of the Class. If you exclude yourself, you cannot object.

## THE LAWYERS REPRESENTING YOU

The Court has approved the request of the following law firms to represent you and the other Class Members: Roger Slade, Esq., of Pathman Lewis LLP, One South Biscayne Tower 2 S. Biscayne Blvd., Miami, FL 33131, Paul J. Geller, Esq., of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 197 S. Federal Highway, Suite 200, Boca Raton, Florida 33432, Tod Aronovitz, Esq., of Aronovitz Trial Lawyers, 150 W. Flagler Street, Miami, FL 33130, John A. Yanchunis, Esq., of James Hoyer Newcomer & Smiljanich, P.A., 3301 Thomasville Road, A200, Tallahassee, FL 32308, and. These lawyers are called Plaintiffs' Counsel. If you want to be represented by your own lawyer, you may hire one at your expense.

### How will the lawyers be paid?

In this settlement, Fidelity Federal Bank and Trust has agreed to pay Plaintiffs' Counsel attorneys' fees in an amount not to exceed $10,000,000 plus their reasonable expenses for their work on this case. Fidelity Federal Bank and Trust has also agreed to pay Class Representative James Kehoe not more than $10,000, and Class Representatives Timothy Neilsen and Timothy G. Martin not more than $3,000 each for their participation in this case on behalf of all Class Members. Each of these payments must be approved by the Court. Fidelity Federal Bank and Trust has also agreed to pay certain costs to administer this settlement.

## THE COURT'S HEARING TO APPROVE THE SETTLEMENT

### When and where will the Court hold its hearing?

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak at the hearing, but you don't have to. The Court will hold the hearing at ___ a.m./p.m. on _____, 2006, at the U.S. District Court for the Southern District of Florida, [_____]. At the hearing, the Court will consider whether the settlement is fair, reasonable and adequate. If there are objections that were received by the deadline, then Court will consider them. The Court will also listen to people who have asked to speak at the hearing. The Court will then decide whether to approve the settlement. The Court may make its decision at the end of the hearing or later.

### Do I have to attend the hearing?

No. The attorneys will answer any questions the Court has. You may attend at your own expense if you want. If you send in an objection, you don't have to come to Court to discuss it. You may also pay your own lawyer to attend or discuss your objections, but that is not necessary.

### May I speak at the hearing?

You may ask the Court to speak at the hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Kehoe v. Fidelity Federal Bank and Trust*, Case No. 03-80593-CIV-HURLEY and *Nielsen v. Fidelity Federal Bank and Trust*, Case No. 06-80557-CIV-HURLEY." Include your name, address, telephone number and signature. Your Notice of Intention to Appear must be received by the Court no later than **[30 days prior to final hearing date], 2006,** and be sent to the Clerk of Court, Plaintiffs' Counsel and Defense Counsel at their addresses above. You cannot speak at the hearing if you excluded yourself or if you do not timely send a Notice of Intention to Appear.

## IF YOU DO NOTHING

### What happens if I do nothing?

If you do nothing, you will not receive any payment from this settlement. Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit or be part of any lawsuit against the Defendant or its successors about the legal issues in this lawsuit.

## MORE INFORMATION

### How can I get more information?

This notice summarizes the proposed settlement. More details are in a Settlement Agreement filed with the Court. You may examine the Court's file in the clerk's office at U.S. District Court for the Southern District of Florida, Clerk of the Court, 301 North Miami Avenue, Miami, FL 33128, for more complete information about the details of the lawsuit and the proposed settlement. You may visit the website of the Settlement Administrator at www.noticeclass.com/FidelityDPPASettlement, write to the Settlement Administrator at Fidelity DPPA Settlement, P.O. Box 42506, Philadelphia, PA 19101or call the Settlement Administrator at _____.

## ATTACHMENT TO NOTICE OF CLASS ACTION SETTLEMENT

## TERMS OF RELEASE

In signing the Claim Form, I understand that I, on my behalf and on behalf of my heirs, successors, and assigns and each of them, and on behalf of all persons on whose behalf I am acting, that I am fully and finally releasing and forever discharging Fidelity Federal Bank and Trust (the "Bank") and all of its affiliated, subsidiary and parent companies, and any other entity or person controlled by such entity, doing business in their own names, and doing business under any other names, and all of their respective officers, directors, partners, insurers, employees, associates, agents, contractors (including The Bureau, Inc.), predecessors, successors, trustees, assigns, and attorneys (the foregoing, collectively, the "Released Persons"), from any and all claims, demands, actions, causes of action, rights, offsets, suits, damages, liquidated damages, punitive damages, lawsuits, liens, losses or liabilities of any kind whatsoever, including monetary, injunctive or declaratory relief, whether known or unknown, alleged or not alleged in Case Nos. 03-80593-CIV-HURLEY and 06-80557-CIV-HURLEY (the "Litigation"), suspected or unsuspected, contingent or vested, which I have had, now have, or may have in the future which were or could have been raised in the Litigation or arising out of or relating in any way to the data the State of Florida Department of Highway Safety and Motor Vehicles provided to the Bank between May 1, 2000 and September 30, 2003, including but not limited to, any and all claims for alleged obtainment, use, representation, misrepresentation, disclosure, incorrect disclosure, failure to disclose, acts (legal or illegal), omission, failure to act with due care, deception, act of unconscionability, act of illegality, unfair business practices, breach of contract, unfulfilled promise, breach of warranty or fiduciary duty, conspiracy, or violation of any consumer protection statute, any applicable state unfair trade practice statute, any applicable federal, state or local privacy law (including without limitation the Driver's Privacy Protection Act) or any other body of case or statutory law, federal or state, arising out of or relating in any way to the Litigation or the facts and circumstances giving rise thereto, including all claims for general, actual, special, liquidated or punitive damages, as well as any and all penalties, attorneys' fees, interest and costs of suit (the foregoing, the "Settled Claims"). I understand that I will be forever barred and enjoined from instituting or further prosecuting, in any forum whatsoever, including any state, foreign or federal court, each and every Settled Claim. I understand and am aware that I may hereafter discover facts in addition to or different from those which I know or believe to be true with respect to the subject matter of this Release, but it is my intention to, and I hereby fully, finally and forever settle and release the Released Persons from any and all Settled Claims, known or unknown, suspected or unsuspected, contingent or matured, which now exist, may hereafter exist, or may heretofore have existed, without regard to the subsequent discovery or existence of different or additional facts.

EXHIBIT B

# CLAIM FORM

**Re:**   **Kehoe v. Fidelity Federal Bank and Trust, Case No. 03-80593-CIV-HURLEY, and Nielsen v. Fidelity Federal Bank and Trust, Case No. 06-80557-CIV-HURLEY**

**U.S. District Court for the Southern District of Florida**
**Clerk of the Court**
**301 North Miami Avenue**
**Miami, FL 33128**

If you wish to make a claim in this case, you must complete this Claim Form and sign the end of this Claim Form. Your completed and signed Claim Form must be postmarked no later than _____, **2006** in order to be valid. Please mail your Claim Form to:

Fidelity DPPA Settlement
P.O. Box 42506
Philadelphia, PA 19101

If you have any questions with regard to completing this Claim Form, write to Plaintiffs' Counsel at Roger Slade, Esq., Pathman Lewis LLP, One South Biscayne Tower, 2 S. Biscayne Blvd., Miami, FL 33131 and Paul J. Geller, Esq., Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 197 S. Federal Highway, Suite 200, Boca Raton, Florida 33432. Please do not contact the Court or Fidelity Federal Bank and Trust for advice or information about this settlement. It is also your responsibility to ensure that your completed and signed Claim Form is received at the above address and postmarked prior to the deadline. The Parties and their attorneys cannot assume responsibility for Claim Forms that are not received.

## STEP ONE:

Please provide the following information that will identify you and allow us to determine if you qualify as a Class Member.

_____
Name

_____
Prior Name (if your Name has changed since 2000)

_____
Present Street Address

_____
Present City, State and Zip Code

If your Name or Address changes at any time prior to the time you receive your compensation, write to the Settlement Administrator at Fidelity DPPA Settlement, P.O. Box 42506, Philadelphia, PA 19101 and provide your previous and new Name or Address. Please indicate that your letter relates to the *Kehoe v. Fidelity Federal Bank and Trust* and *Nielsen et al. v. Fidelity Federal Bank and Trust*, settlement.

-1-

## STEP TWO:

Please complete and certify the following information, by signing below (in Step Three), so that we can determine if you are a Class Member. If you cannot provide this information, we will attempt to process your claim with the information provided. You will be informed if we determine that we need additional information or that you are not eligible for payment from the settlement. It is your responsibility to provide us with sufficient information so that we can process your claim.

A.   I registered a new automobile or a used automobile with the State of Florida Department of Highway Safety and Motor Vehicles between May 1, 2000 and September 30, 2003. <u>CHECK ONE OF THE FOLLOWING</u>:

     ____   YES

     ____   NO

B.   Identify by year, make and model the car or cars you registered between May 1, 2000 and September 30, 2003 (for example, "2001 Ford Escort").

     _____

C.   At the time you registered the vehicle identified above, did you live in Palm Beach, Martin, Broward, or St. Lucie County, Florida? <u>CHECK ONE OF THE FOLLOWING</u>:

     ____   YES

     ____   NO

D.   Have you been an employee of Fidelity Federal Bank and Trust or any of its subsidiaries, parents or affiliates at any time since May 1, 2000? <u>CHECK ONE OF THE FOLLOWING</u>:

     ____   YES

     ____   NO

E.   Are you a member of the federal judiciary or within the third degree of relationship to a member of the federal judiciary, or the spouse of such a person? The following relatives are within the third degree of relationship: parent, child, grandparent, grandchild, great grandparent, great grandchild, sister, brother, aunt, uncle, niece and nephew; the listed relatives include whole and half blood relatives and most step relatives. <u>CHECK ONE OF THE FOLLOWING</u>:

     ____   YES

     ____   NO

## STEP THREE:

Please sign below.  In signing below, you are giving up certain claims against Fidelity Federal Bank and Trust and other parties.

## TERMS OF RELEASE

In signing the Claim Form, I understand that I, on my behalf and on behalf of my heirs, successors, and assigns and each of them, and on behalf of all persons on whose behalf I am acting, am fully and finally releasing and forever discharging Fidelity Federal Bank and Trust (the "Bank") and all of its affiliated, subsidiary and parent companies, and any other entity or person controlled by such entity, doing business in their own names, and doing business under any other names, and all of their respective officers, directors, partners, insurers, employees, associates, agents, contractors (including The Bureau, Inc.), predecessors, successors, trustees, assigns, and attorneys (the foregoing, collectively, the "Released Persons"), from any and all claims, demands, actions, causes of action, rights, offsets, suits, damages, liquidated damages, punitive damages, lawsuits, liens, losses or liabilities of any kind whatsoever, including monetary, injunctive or declaratory relief, whether known or unknown, alleged or not alleged in Case Nos. 03-80593-CIV-HURLEY and 06-80557-CIV-HURLEY (the "Litigation"), suspected or unsuspected, contingent or vested, which I have had, now have, or may have in the future which were or could have been raised in the Litigation or arising out of or relating in any way to the data the State of Florida Department of Highway Safety and Motor Vehicles provided to the Bank between May 1, 2000 and September 30, 2003, including but not limited to, any and all claims for alleged obtainment, use, representation, misrepresentation, disclosure, incorrect disclosure, failure to disclose, acts (legal or illegal), omission, failure to act with due care, deception, act of unconscionability, act of illegality, unfair business practices, breach of contract, unfulfilled promise, breach of warranty or fiduciary duty, conspiracy, or violation of any consumer protection statute, any applicable state unfair trade practice statute, any applicable federal, state or local privacy law (including without limitation the Driver's Privacy Protection Act) or any other body of case or statutory law, federal or state, arising out of or relating in any way to the Litigation or the facts and circumstances giving rise thereto, including all claims for general, actual, special, liquidated or punitive damages, as well as any and all penalties, attorneys' fees, interest and costs of suit (the foregoing, the "Settled Claims").  I understand that I will be forever barred and enjoined from instituting or further prosecuting, in any forum whatsoever, including any state, foreign or federal court, each and every Settled Claim.  I understand and am aware that I may hereafter discover facts in addition to or different from those which I know or believe to be true with respect to the subject matter of this Release, but it is my intention to, and I hereby fully, finally and forever settle and release the Released Persons from any and all Settled Claims, known or unknown, suspected or unsuspected, contingent or matured, which now exist, may hereafter exist, or may heretofore have existed, without regard to the subsequent discovery or existence of different or additional facts.

I hereby declare under the penalty of perjury that the above facts are true and correct to the best of my knowledge and certify that I have read this Claim Form and accepted it voluntarily and knowingly.

DATED:_____      _____
                                             Signature

**REMINDER:  TO BE VALID, THIS CLAIM FORM MUST BE COMPLETED IN FULL AND SIGNED AT THE SIGNATURE LINE ABOVE AND MUST BE POSTMARKED BY _____, 2006.**

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| JAMES KEHOE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | CASE No. 03-80593 |
| | ) | Judge Daniel T.K. Hurley |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| FIDELITY FEDERAL BANK AND TRUST, | ) ) | |
| Defendant. | ) ) ) | |
| TIMOTHY NEILSEN and TIMOTHY G. MARTIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | CASE No. 06-80557

Judge Daniel T.K. Hurley |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| FIDELITY FEDERAL BANK AND TRUST, | ) ) | |
| Defendant. | ) ) ) | |

## FINAL JUDGMENT AND ORDER OF DISMISSAL

The Court having considered the Settlement Agreement dated as of July 21, 2006 (the "Settlement Agreement"); a class having been conditionally certified by Order dated _____, 2006, consisting of all persons who meet all of the following criteria: (i) whose personal information was provided by the State of Florida Department of Highway Safety and Motor Vehicles (the "DHSMV") to Fidelity Federal Bank and Trust between May 1, 2000 and September 30, 2003; (ii) who are not nor have they been employed by Fidelity Federal Bank and Trust or any of its subsidiaries, parents or affiliates at any time since May 1, 2000; and (iii) who are not members of the federal judiciary or within the third degree of relationship to a member of the federal judiciary, or the spouses of such persons (such persons, the "Plaintiff Class"); the Motion for Final Approval of Settlement, and for Entry of Final Judgment and Order of Dismissal having been heard; a hearing having been held on _____, 2006, for the purpose of

determining whether the terms of the settlement reflected in the Settlement Agreement are fair, reasonable and adequate to the Class; members of the Class having been given the opportunity to be heard; having received and considered any objections and written materials; and heard and considered oral presentations concerning the Settlement Agreement; and upon all papers and proceedings had in this action, and in support thereof states and orders as follows:

1.     All capitalized terms used herein shall have the same meaning as those terms in the Settlement Agreement previously approved by the Court.

2.     There are currently pending in these actions, claims by James Kehoe, and by Timothy Neilsen and Timothy G. Martin (collectively "Plaintiffs"), who assert claims against Defendant Fidelity Federal Bank and Trust ("Fidelity" or "Defendant"), for among other things, violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, seeking damages and injunctive relief, on their own behalf and on behalf of a class of persons similarly situated, as a result of Fidelity's allegedly obtaining, disclosing or using for unauthorized purposes certain personal information of the Plaintiff Class contained in their motor vehicle driving records maintained with the DHSMV.

3.     Fidelity disputes each and every one of Plaintiffs' claims and denies any liability with respect to these actions, but consents to entry of this Final Judgment and Order of Dismissal only for purposes of settlement.

NOW THEREFORE, after due deliberation, it is hereby ORDERED, ADJUDGED AND DECREED that:

1.     This Court has jurisdiction over the subject matter of this action, the Plaintiffs, the Plaintiff Class and Fidelity.  The Motion for Final Approval of Settlement, and for Entry of Final Judgment and Order of Dismissal is GRANTED.

2.     This Court finally certifies the following Class for purposes of settlement under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3):

All persons who meet all of the following criteria:

(i)     whose personal information was provided by the DHSMV to Fidelity
between May 1, 2000 and September 30, 2003;

(ii)    who are not and have not been employed by Fidelity or any of its
subsidiaries, parents (or their subsidiaries) or affiliates at any time since
May 1, 2000; and

(iii)   who are not members of the federal judiciary or within the third degree of
relationship to a member of the federal judiciary, or the spouses of such
persons.

3.      The proposed settlement of this action is in its entirety, and all releases,
including its release of all claims on the terms set forth in the Settlement Agreement, are in all
respects, fair, reasonable and adequate to the Plaintiff Class and in the best interests of the
Plaintiff Class and should be approved.  The Settlement Agreement was arrived at as a result of
arm's-length negotiations conducted in good faith by counsel for the Parties.   The relief to Class
Members contemplated by the Settlement Agreement constitutes a common benefit to the Class
which is substantial, appropriate and ascertainable.

4.      The notification provided for in the order preliminarily approving class
settlement has been provided to the Plaintiff Class and publication of the summary notice in
various newpapers, constitutes the best notice practicable under the circumstances, and was in
full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure,
due process, the United States Constitution and any other applicable law.  The Notice apprised
the members of the Class of the pendency of the litigation; of all material elements of the
proposed settlement, including but not limited to the relief available under the Settlement
Agreement and steps necessary to obtain the relief; of the *res judicata* effect on members of the
Class and of their opportunity to exclude themselves from, object to, or comment on the
settlement; of the identity of Class Counsel and of information necessary to contact Class
Counsel; and of the right to appear at the Fairness Hearing.  Full opportunity has been afforded
to members of the Class to participate in this Fairness Hearing.  Accordingly, the Court
determines that all members of the Class are bound by this Order and by the final judgment to be
entered pursuant thereto in accordance with the terms provided herein.

5.      The Settlement Agreement and the terms of the settlement set forth therein,
including the releases, are hereby approved and shall be consummated by the Parties in

accordance with the terms and provisions of the Settlement Agreement. The benefits and relief contemplated by the Settlement Agreement, and the provisions and commitments of the Parties under the terms of the Settlement Agreement, constitute fair value given in exchange for the releases of Settled Claims by Class Members against the Released Persons as those terms are defined in the Settlement Agreement.  The distribution of relief to Claimants shall proceed as set forth in the Settlement Agreement.

6.     This action, and all claims alleged therein, are dismissed on the merits and with prejudice to the Plaintiffs and all members of the Plaintiff Class (except those who have excluded themselves), and this dismissal shall be without costs to any party.

7.     Neither this Judgment nor the Settlement Agreement, nor any of its terms or provisions nor any of the negotiations or proceedings connected with it, shall be:  (1) construed as an admission or concession by Fidelity of the truth of any of the allegations in the Complaint, or of any liability, fault, or wrongdoing of any kind; or (2) construed as an admission by the Plaintiffs or Plaintiff Class as to any lack of merit of the claims or this action.

8.     As of the date of this Judgment and Order of Dismissal, the Plaintiffs and all members of the Plaintiff Class (except those who have excluded themselves), and all persons in privity with them and all persons acting in concert or participation with them, either directly or indirectly, representatively or in any capacity, are hereby permanently barred and enjoined from commencing, prosecuting, or participating in the recovery of any direct or representative action or any action in any other capacity, asserting or relating to any of the Settled Claims against the Released Persons in this or any other forum.

9.     Plaintiffs and any members of the Plaintiff Class (except those who have excluded themselves), pursuant to the Settlement Agreement and Notice of Class Action Settlement, are and shall be bound by the Release set forth in Sections 7(a) and (b) of the Settlement Agreement, regardless of whether any such person submitted a claim, and shall be restrained and enjoined in accordance with Paragraph 8 of this Judgment and Order.

10.     As of the date of this Judgment and Order of Dismissal, the Plaintiffs and all members of the Plaintiff Class (excluding those who have excluded themselves), and all persons

in privity with them and all persons acting in concert or participation with them, either directly or indirectly, representatively or in any capacity, are hereby permanently barred and enjoined from commencing, prosecuting, or participating in the recovery of any direct or representative action or any action in any other capacity, asserting or relating to any of the Data Released Claims, against the Data Released Persons in this or any other forum.

11.    Plaintiffs and members of the Plaintiff Class (excluding those who have excluded themselves) pursuant to the Settlement Agreement and Notice of Class Action Settlement are and shall be bound by the Release set forth in Section 7(d) of the Settlement Agreement, and shall be restrained and enjoined in accordance with Paragraph 10 of this Judgment and Order.

12.    Neither the Parties, Released Persons, the Settlement Administrator or their agents, employees, attorneys or any one acting on their behalf, have violated federal or state law, including the DPPA, in any way in obtaining, using or disclosing the data that the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003 or the data obtained from the DHSMV during discovery proceedings in the Litigation, to implement the terms of the Settlement Agreement.

13.    The Bank has sufficiently certified to Plaintiffs' Counsel that it did not keep or maintain any data obtained from motor vehicle records which the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003.

14.    The Bank shall not disclose the any data obtained from motor vehicle records which the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003.

15.    The Bank shall not sell any data obtained from the motor vehicle records which the DHSMV provided to the Bank between May 1, 2000 and September 30, 2003.

16.    The Bank shall has sufficiently certified to Plaintiffs' Counsel that it and its agents and contractors have destroyed all Class Member records obtained from DHSMV or certify that it no longer has any such records in its possession.  The Bank will agree to a privacy audit with respect to Class Member records provided to the Bank by DHSMV, and will use its

best efforts to assist in the effort to conduct a privacy audit of its contractor.  The total audit costs, which shall be included in the Administrative Expenses, shall not exceed $25,000.

17.    The parties have complied with the requirements of the Class Action Fairness Act.

18.    Without affecting the finality of this Judgment in any way, the Court reserves exclusive and continuing jurisdiction over this action, the Plaintiffs, the Plaintiff Class and Fidelity for purposes of interpretation, enforcement and implementation of the Settlement Agreement and over the administration and distribution of settlement benefits.

19.    The Court approves the payment of an incentive award to plaintiff James Kehoe in the amount of $10,000.00, to plaintiff Timothy Neilsen in the amount of $3,000.00, and to plaintiff Timothy G. Martin in the amount of $3,000.00, for their participation as a class representatives in these Cases, which sums will be paid in accordance with the terms of the Settlement Agreement.

20.    The Court approves the award of $10,000,000.00 in full and final payment of and for any and all attorney's fees of Plaintiffs' Counsel and $____ in full and final payment of all Plaintiffs' costs and other litigation expenses, including any and all attorneys' fees and/or expenses to which Plaintiffs or Plaintiffs' Counsel may claim that they are entitled to under any statute or rule or common law or their work in connection with the claims being resolved by this Settlement.  Payment of such amount by Defendant shall be in accordance with the terms of the Settlement Agreement.  The Court retains jurisdiction over the award of such fees and expenses and the allocation thereof among and between Plaintiffs' Counsel.

21.    The Clerk of Court is ordered to enter this Judgment forthwith.

**DONE AND ENTERED** at _____, this ___ day of _____, 2006.


_____
Judge Daniel T.K. Hurley
U.S. District Court
Southern District of Florida

# EXHIBIT D

## SUMMARY NOTICE OF CLASS ACTION SETTLEMENT

**IF YOU REGISTERED A NEW OR USED AUTOMOBILE IN PALM BEACH, MARTIN, BROWARD, OR ST. LUCIE COUNTY, FLORIDA BETWEEN MAY 1, 2000 AND SEPTEMBER 30, 2003, YOU MAY BE ENTITLED TO BENEFITS AS A RESULT OF A CLASS ACTION SETTLEMENT.**

A settlement has been proposed in two class action lawsuits that claim that the State of Florida Department of Highway Safety and Motor Vehicles provided personal information about certain persons contained in motor vehicle records to Fidelity Federal Bank and Trust for impermissible purposes.  The settlement will provide a payment of a pro rata share of the total settlement fund amount, not to exceed $160, to any person whose personal information contained in such motor vehicle records was obtained by Fidelity Federal Bank and Trust.  If you qualify, you may send in a claim form to get the payment, exclude yourself from the settlement, or object to it.

The U.S. District Court for the Southern District of Florida authorized this notice.  Before any amounts are paid, the Court will have a hearing to decide whether to approve this settlement.

### What's This About?

The lawsuits claimed that the State of Florida Department of Highway Safety and Motor Vehicles provided personal information contained in Florida motor vehicle records to Fidelity Federal Bank and Trust for impermissible purposes without first obtaining consent of the persons affected.  As a result, the lawsuits asserted a violation of federal law relating to Fidelity Federal Bank and Trust's obtaining such information between May 1, 2000 and September 30, 2003.  Fidelity Federal Bank and Trust denies it did anything wrong and does not admit any wrongdoing by this settlement.  The Court did not decide which side was right.  But both sides agreed to the settlement to resolve the case.  The parent company of Fidelity Federal Bank and Trust intends to be acquired by National City Corporation, and this settlement is dependent on the successful completion of that acquisition.

### Who's Included?

You may be a Class Member if you registered a new or certain model year used automobile in Palm Beach, Martin, Broward, St. Lucie, or Indian River County, Florida between May 1, 2000 and September 30, 2003, except if you are or were an employee of Fidelity Federal Bank and Trust or any of its subsidiaries, parents (or their subsidiaries) or affiliates at any time since May 1, 2000, or if you are a member of the federal judiciary or within the third degree of relationship to a member of the federal judiciary, or the spouse of such a person.  Only those persons whose personal information contained in the Florida motor vehicle records were received by Fidelity Federal Bank and Trust between May 1, 2000 and September 30, 2003 may qualify for the settlement payment.

### What Does the Settlement Provide?

If you qualify, you will get a pro rata share of the total settlement fund amount, not to exceed $160.  You can find out more about the settlement at the website below or by writing to the Settlement Administrator at the address below.

### How Do I Ask for the Settlement Payment?

The detailed notice and claim form package have everything you need.  Just visit the website below or write to the address below.  To qualify for the payment, you must send in a claim form.

**Claim forms must be postmarked by _____, 2006.**  Once this settlement is final and becomes effective, you will receive your payment.

## What are My Other Options?

If you don't want to be legally bound by the settlement, you must exclude yourself by _____, 2006, or you won't be able to sue Fidelity Federal Bank and Trust about the legal claims in these cases.  If you exclude yourself, you won't receive the settlement payment.  If you stay in the settlement, you may object to it by _____, 2006.  The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in these cases (*Kehoe v. Fidelity Federal Bank and Trust*, Case No. 03-80593-CIV-HURLEY and *Nielsen et al. v. Fidelity Federal Bank and Trust*, Case No. 06-80557-CIV-HURLEY) on _____, 2006 at _____ a.m./p.m. before the Honorable Judge Daniel T.K. Hurley at the U.S. District Court for the Southern District of Florida, [address], to decide whether to approve the settlement.  You may appear at this hearing.

## Where do I Get More Information?

You may (1) Write to the Settlement Administrator at Kehoe/Nielsen Settlement, P.O. Box 42506, Philadelphia, PA 19101; or (2) Visit the Web site at **www.noticeclass.com/FidelityDPPASettlement**.

## PLEASE DO NOT CONTACT THE COURT

# EXHIBIT E

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| JAMES KEHOE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | CASE No. 03-80593-CIV |
| | ) | Judge Daniel T.K. Hurley |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| FIDELITY FEDERAL BANK AND TRUST, | ) ) | |
| Defendant. | ) ) ) | |
| TIMOTHY NEILSEN and TIMOTHY G. MARTIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | CASE No. 06-80557-CIV Judge Daniel T.K. Hurley |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| FIDELITY FEDERAL BANK AND TRUST, | ) ) ) | |
| Defendant. | ) ) ) | |

## ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT

In these actions, Plaintiffs James Kehoe, Timothy Neilsen, and Timothy G. Martin, on behalf of themselves and all others similarly situated ("Plaintiffs") assert claims against Defendant Fidelity Federal Bank and Trust ("Fidelity" or "Defendant"), for violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, seeking damages and injunctive relief, on their own behalf and on behalf of a class of persons similarly situated, as a result of Fidelity's allegedly obtaining, disclosing or using for unauthorized purposes certain personal information of the Plaintiff Class contained in their motor vehicle driving records maintained with the State of Florida Department of Highway Safety and Motor Vehicles ("DMV").

Fidelity has denied each of the claims asserted against it in this action and denies any and all liability based on a number of defenses. The parent company of Fidelity now intends to be acquired by National City Corporation, a bank holding company headquartered in Cleveland, Ohio with assets of approximately $140 billion.

This Court has now been presented with a Settlement Agreement (the "Settlement Agreement"), dated July 21, 2006, contingent on the consummation of the acquisition of Fidelity's parent company by National City Corporation, negotiated and consented to on behalf of the parties, which resolves any and all claims arising out of the Litigation (as defined in the Settlement Agreement). Having considered the terms of the Settlement Agreement in the light of the issues presented by the pleadings, the record in this case, the complexity of the proceedings, the absence of any indication of collusion between adversaries, and the experience of Plaintiffs' Counsel in this matter; and being preliminarily satisfied that the Settlement Agreement is fair, reasonable and consistent with the requirements of applicable laws; and being satisfied that the "Notice of Class Action Settlement" is adequate and sufficiently informative as to the terms and effect of the proposed settlement and the conditional certification of the class, IT IS ORDERED THAT:

1.     The Settlement Agreement is hereby conditionally approved as a fair, reasonable, and adequate compromise of the risks of litigation. The parties are authorized and directed to take all actions which may be required prior to final approval by the Court of the settlement and compromise set forth in the Settlement Agreement.

2.     (a) For the sole purpose of determining whether the settlement embodied in the Settlement Agreement should be approved as fair, reasonable and adequate and whether the cases pending at Case Nos. 03-80593-CIV-HURLEY and 06-80557-CIV-HURLEY should be dismissed with prejudice, a settlement class is hereby conditionally certified under Rule 23 of the Federal Rules of Civil Procedure and which class is defined as follows: *All persons who meet all of the following criteria: (i) whose personal information was provided by the State of Florida Department of Highway Safety and Motor Vehicles to the Bank between May 1, 2000 and September 30, 2003; (ii) who are not and have not been employed by Fidelity Federal Bank and Trust or any of its subsidiaries, parents (or their subsidiaries) or affiliates at any time since May*

*1, 2000; and (iii) who are not members of the federal judiciary or within the third degree of relationship to a member of the federal judiciary, or the spouses of such persons.*

       (b)  In connection with its decision to provisionally certify the above-defined class for the purposes and without prejudice to any party's right to be returned to the status quo, including any appellate rights, in the event the settlement is not finally approved, the Court tentatively finds a class may be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure pursuant to the terms of the Agreement.

    3.     The Court conditionally approves of and appoints Roger Slade, Esq., of Pathman Lewis LLP, Paul J. Geller, Esq., of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Tod Aronovitz, Esq., of Aronovitz Trial Lawyers, and John A. Yanchunis, Esq., of James Hoyer Newcomer & Smiljanich, P.A. to serve as counsel for the Plaintiff Class for the purpose of determining whether the settlement embodied in the Settlement Agreement should be approved as fair, reasonable and adequate and whether the cases pending at Case Nos. 03-80593-CIV-HURLEY and 06-80557-CIV-HURLEY should be dismissed with prejudice.

    4.     The form of Notice of Class Action Settlement (the "Class Notice") attached as Exhibit A to the Settlement Agreement is hereby approved.  The Class Notice shall be mailed by the Settlement Administrator (as defined in the Settlement Agreement) via first class mail within 45 days of the entry of this Order to each Class Member at its last known address as set forth on the list that Plaintiffs' Counsel has previously provided or will provide to the Settlement Administrator.

    5.     The Claim Form (the "Claim Form") attached as Exhibit B to the Settlement Agreement is hereby approved.  The Claim Form shall be mailed by the Settlement Administrator together with the Class Notice as set forth in Section 4 of this Order.

    6.     A Summary Notice (the "Summary Notice") of the settlement, in the form attached as Exhibit E to the Settlement Agreement, shall be published for two consecutive dates in the *Palm Beach Post*, *Port St. Lucie Post*, *Ft. Lauderdale Sun Sentinel*, *Miami Herald* (Broward edition), and *Vero Beach Press Sentinel* within 10 days after mailing of the Class Notice.

7.     Non-substantive changes may be made to the Class Notice, Summary Notice and Claim Form by agreement of the Parties without further order of this Court.

8.     Completed and signed Claim Forms must be submitted by Class Members to the Settlement Administrator postmarked no later than 90 days after mailing of Claim Forms to Class Members; otherwise, a claimant will not receive the settlement provided in the Settlement Agreement.

9.     A hearing shall be held before the court on the day of _____, 2006 (the "Final Hearing Date"), for the purpose of determining whether the settlement and compromise set forth in the Settlement Agreement shall be approved finally by the Court and whether final judgment dismissing the actions is appropriate.

10.     Any person who wishes to oppose or object to final approval of the settlement and compromise in Case Nos. 03-80593 and 06-80557 shall, 30 days before the Final Hearing Date, file with the Clerk of the Court for the U.S. District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, FL 33128:  (i) notice that such person opposes the proposed settlement, stating such objections as they may have, and also stating whether they or their attorney intend to appear at the settlement hearing; and (ii) any paper, affidavits or briefs which such person wishes the Court to consider.  Copies of such objections and papers shall be sent at the time of filing by the objector to Plaintiffs' Counsel at Roger Slade, Esq., Pathman Lewis LLP, One South Biscayne Tower, 2 S. Biscayne Blvd., Miami, FL  33131, and Paul J. Geller, Esq., Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 197 S. Federal Highway, Suite 200, Boca Raton, Florida 33432, and to Defendant's Counsel at L. Louis Mrachek, Esq., Page, Mrachek, Fitzgerald & Rose, P.A., 505 S. Flagler Drive, Suite 600, West Palm Beach, FL 33401.  Any person who has filed said notice may appear at the hearing and attempt to show cause why such settlement and compromise should not be approved by the Court and final judgment entered in accordance therewith.

11.     Any person who wishes to be excluded from the Class and the settlement and compromise in Case Nos. 03-80593-CIV-HURLEY and 06-80557-CIV-HURLEY shall do so 45 days before the Final Hearing Date by filing with the Settlement Administrator written notice that such person intends to be excluded from the Class and the proposed settlement.

12.     Defendant, through its Settlement Administrator, is directed to compile a list of the name and address of every individual who opts out of the class in Case Nos. 03-80593-CIV-HURLEY and 06-80557-CIV-HURLEY and to file it with the Court and serve it on the Parties no later than 10 days before the Final Hearing date the complete list of individuals who timely filed notice to exclude themselves from the Class and the proposed settlement.

13.     Plaintiffs' Counsel are directed to compile a list of the name and address of individuals who may be members of the class in Case Nos. 03-80593-CIV-HURLEY and 06-805576-CIV-HURLEY to whom the Class Notice will be mailed by the Settlement Administrator.  After mailing of the Class Notice, Plaintiffs' Counsel or the Settlement Administrator shall file the attorney's certificate of mailing with the Clerk of Court.  The certificate need not include the names and addresses of the class members to whom the notice is mailed.

14.     The Court hereby declares and affirms that none of the Parties, Released Persons, the Data Auditor, the Bank's Counsel (including their consultants), Plaintiffs' Counsel, or the Settlement Administrator, as those terms are defined in the Settlement Agreement, nor their agents or representatives, shall be in violation of any state or federal law, including the DPPA, for obtaining, using or disclosing the data obtained from the DHSMV during discovery proceedings in the Litigation in connection with complying with the terms of this Order or implementation of the settlement.  Their obtainment, use and disclosure of the data and related information under these circumstances is a permissible use of that information and data under the DPPA.  The Court hereby authorizes and permits the Bank, its counsel and the Settlement Administrator to use and disclose the data obtained from the DHSMV during discovery proceedings in the Litigation to facilitate and implement the terms of the Settlement Agreement.

15.     The Clerk is directed to send certified copies of this Order to all counsel of record and to provide a signed copy of the Notice to counsel for Defendant so that copies of the signed Notice may be communicated to the Class Members.

16.     The costs and expenses of preparing, printing and mailing said Class Notices shall be paid by Defendant as Administrative Expenses pursuant to the terms of the Settlement Agreement.

17.     All proceedings in the Litigation other than such as may be necessary to carry out the terms and conditions of this Order or the responsibilities incidental thereto are stayed and suspended until further Order of Court.

**DONE AND ENTERED** at _____, this ____ day of _____, 2006.

_____
Judge Daniel T.K. Hurley
U.S. District Court
Southern District of Florida

-6-

# EXHIBIT 2

**National City Corporation**
**Investors**
Jennifer Hammarlund
(216) 222-9849

**Fidelity Bankshares, Inc.**
**Investors**
Vince A. Elhilow
or
Richard D. Aldred
(561) 803-9980

**Media**
Kristen Baird Adams
(216) 346-6803
or
Kelly Wagner Amen
(216) 222-9514

**Media**
Dennis Casey
(561) 301-1067

## NATIONAL CITY AND FIDELITY BANKSHARES ANNOUNCE DEFINITIVE AGREEMENT FOR NATIONAL CITY TO ACQUIRE FIDELITY

CLEVELAND—July 27, 2006— National City Corporation (NYSE: NCC) and Fidelity Bankshares, Inc. (NASDAQ: FFFL) today announced that they have reached a definitive agreement for National City to acquire Fidelity Bankshares.

Fidelity is the 4th largest publicly traded banking institution based in Florida. Headquartered in West Palm Beach, Fidelity has $4.2 billion in total assets and operates 52 branches along Florida's east coast, from Port St. Lucie to Ft. Lauderdale. Upon completion of this transaction and National City's pending acquisition of Fort Pierce-based Harbor Florida Bancshares, Inc. (NASDAQ: HARB), National City will have a 92-branch network along Florida's east coast, with total assets of more than $7 billion.

 "Consistent with our strategy, Fidelity is a well-run institution with a sizeable branch network situated in an attractive growth market," said David A. Daberko, chairman and chief executive officer of National City. "We intend to build on this impressive franchise with our full suite of products and services, including consumer and small business lending, credit card, expanded corporate banking and wealth management."

"This partnership will be good for our customers, shareholders, employees and communities. Joining forces with National City will enhance our product and service offerings and greatly expand the channels through which we meet the financial services needs of our customers," said Vince A. Elhilow, chairman and chief executive officer of Fidelity Bankshares.

That network will include National City's 1,200 branches and 1,900 ATMs in seven other states, including Ohio, Illinois, Indiana, Kentucky, Michigan, Missouri and Pennsylvania.

"Fidelity Bankshares has longstanding ties to Southeast Florida, and we're proud to team up with a company that shares our commitment to our customers and our communities," said Mr. Elhilow, who upon completion of the transaction, will remain as chairman and CEO. "Local decision making is and will remain a central theme of National City's business model, as will a commitment to supporting the communities it serves."

To demonstrate that commitment, National City will establish a $2 million charitable fund to benefit the communities currently served by Fidelity.

Under terms of the agreement, Fidelity stockholders may elect to receive $39.50 in cash or 1.0977 shares of NCC common stock subject to allocation procedures that will allow 50 percent of the FFFL shares outstanding to receive cash and 50 percent to receive stock. The transaction has a total indicated value of approximately $1 billion. Subject to regulatory and Fidelity stockholder approval, the transaction is expected to close in the first quarter of 2007.

While the Fidelity Bankshares and Harbor Florida acquisitions will mark National City's first retail banking presence in Florida, the company has conducted business in the state for many years, primarily residential and commercial real estate lending, commercial finance, and personal wealth management.

Keefe, Bruyette & Woods, Inc. served as financial advisor to Fidelity.  Luse, Gorman, Pomerenk and Schick, P.C., acted as legal counsel.

National City will host a conference call at 9:30 a.m. Eastern Time today, July 27, 2006, to discuss the proposed acquisition of Fidelity Bankshares. Interested parties may access the conference call by dialing 1-877-777-1971. The call will be open to the public with both media and individual investors invited to participate in a listen-only mode. Participants are encouraged to call in 15 minutes prior to the call in order to register for the event. The conference call will also be accessible via the National City's Web site, www.nationalcity.com/investorrelations along with the accompanying slide presentation.

A replay of the conference call will be available from 1:00 p.m. Eastern Time on July 27, 2006, until midnight Eastern time on August 4, 2006. The replay will be accessible by calling 1-800-475-6701 (domestic) or 1-320-365-3844 (international) using the passcode of 837920 or via the company's Web site.

In connection with the proposed transaction, a registration statement on Form S-4 will be filed with the United States Securities and Exchange Commission (SEC). Stockholders are encouraged to read the registration statement, including the final proxy statement/prospectus that will be a part of the registration statement, because it will contain important information about the proposed transaction. Stockholders will be able to obtain a free copy of the proxy statement/prospectus, as well as other filings containing information about National City Corporation and Fidelity Bankshares, Inc., without charge, at the SEC's Web site, http://www.sec.gov, and the companies' respective Web sites, www.nationalcity.com and www.fidelityfederal.com. Copies of the proxy statement/prospectus and the SEC filings that will be incorporated by reference in the proxy statement/prospectus can also be obtained, without charge, by directing a request to National City Corporation at 1900 East Ninth Street, Locator 2229, Cleveland, OH 44114 Attention: Investor Relations, 1-800-622-4204, or to Fidelity Bankshares at 205 Datura Street, West Palm Beach, Florida 33401, Attention: Investor Relations, 561-803-9980.

The respective directors and executive officers of National City and Fidelity Bankshares and other persons may be deemed to be participants in the solicitation of proxies in respect of the proposed transaction. Information regarding National City's directors and executive officers is available in its proxy statement filed with the SEC on March 8, 2006, and information regarding Fidelity Bankshares directors and executive officers is available in its proxy statement filed with the SEC on March 24, 2006. Other information regarding the participants in the proxy solicitation and a description of their direct and indirect interests, by security holdings or otherwise, will be contained the joint proxy statement/prospectus and other relevant materials to be filed with the SEC when they become available.

This document contains forward-looking statements. Forward-looking statements provide current expectations or forecasts of future events and are not guarantees of future performance, nor should they be relied upon as representing management's views as of any subsequent date. The forward-looking statements are based on management's expectations and are subject to a number of risks and uncertainties. Although management believes that the expectations reflected in such forward-looking statements are reasonable, actual results may differ materially from those expressed or implied in such statements.

The following factors, among others, could cause actual results to differ from those set forth in the forward-looking statements: the ability to obtain governmental approvals of the merger on the proposed terms and schedule; the failure of Fidelity Bankshares' stockholders to approve the merger; the risk that the businesses will not be integrated successfully; the risk that the cost savings and any other synergies from the merger may not be fully realized or may take longer to realize than expected; disruption from the merger making it more difficult to maintain relationships with clients, employees or suppliers; increased competition and its effect on pricing, spending, third-party relationships and revenues; the risk of new and changing regulation in the U.S. and internationally. Additional factors that could cause National City's and Fidelity Bankshares' results to differ materially from those described in the forward-looking statements can be found in the 2006 Quarterly Reports on Form 10-Q, as they are filed, and the 2005 Annual Report on Form 10-K of National City and Fidelity Bankshares filed with the SEC. Copies of these filings are available at no cost on the SEC's Web site, www.sec.gov, and on the companies' respective Web sites, www.nationalcity.com and www.fidelityfederal.com . Management may elect to update forward-looking statements at some future point; however, it specifically disclaims any obligation to do so.

**About National City**
National City Corporation (NYSE: NCC), headquartered in Cleveland, Ohio, is one of the nation's largest financial holding companies. The company operates through an extensive banking network primarily in Ohio, Illinois, Indiana, Kentucky, Michigan, Missouri and Pennsylvania, and also serves customers in selected markets nationally. Its core businesses include commercial and retail banking, mortgage financing and servicing, consumer finance and asset management.

**About Fidelity Bankshares, Inc.**

Fidelity Bankshares, Inc. is a $4.2 billion banking institution based in West Palm Beach, Florida. Fidelity Bankshares is the holding company for Fidelity Federal Bank & Trust, which operates 52 branches along the eastern coast of Florida from Port St. Lucie to Ft. Lauderdale.

###