UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  03-80593-CIV-HURLEY/LYNCH

JAMES KEHOE, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

vs.

FIDELITY FEDERAL BANK AND TRUST,

Defendant.

_____ /

Case No. 06-80557-CIV-HURLEY/HOPKINS

TIMOTHY NEILSEN and TIMOTHY G.
MARTIN, Individually and on Behalf of All
Others Similarly Situated,

Plaintiffs,

vs.

FIDELITY FEDERAL BANK AND TRUST,

Defendant.

_____ /

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**_Toc150912542

I.      INTRODUCTION ............................................................................................1

II.     OVERVIEW OF PROCEEDINGS AND SETTLEMENT ...............................3

        A.      Summary of Plaintiffs' Allegations ..................................................3

        B.      History of the Proceedings................................................................5

        C.      Summary of Settlement Negotiations and Settlement .......................7

III.    SUMMARY OF SETTLEMENT AGREEMENT .............................................9

        A.      Cash Payments to Settlement Class Members of $160 Each for Alleged
                Violations of Their Privacy.............................................................9

        B.      Fidelity's Agreement to Undergo a Privacy Audit to Ensure the
                Destruction of All Improperly Obtained Personal Information of Class
                Members – Permanent Injunctive Relief ........................................10

        C.      Other Payments Made on Behalf of Class Members........................10

        D.      Class Certification..........................................................................10

IV.     ARGUMENT ...............................................................................................11

        A.      A Class Action Should be Certified for Settlement Purposes...........11

                1.      Standards for Class Certification .........................................11

                2.      Numerosity........................................................................12

                3.      Commonality......................................................................12

                4.      Typicality ..........................................................................14

                5.      Adequacy ..........................................................................15

                6.      Class Certification Is Appropriate Under Rule 23(b)(3)............16

                        a.      Predominance........................................................17

                        b.      A Class Action Is Superior to Other Available Methods for
                                the Fair and Efficient Adjudication of This Action ......17

                7.      Class Certification Under Rule 23(b)(2) Is Appropriate............19

                        a.      Fidelity's Conduct Is "Generally Applicable" to the Class ..........19

|   |   |   | b. | Final Injunctive Relief Is Requested | 20 |

| | B. | The Court Has Personal Jurisdiction Over All Settlement Class Members | 21 |

| | | 1. | The Legal Standard | 21 |

| | | 2. | Settlement Class Members Have Received Best Practical Notice of This Settlement | 21 |

| | C. | The Settlement Is Fair, Reasonable and Adequate | 23 |

| | | 1. | There Is No Fraud or Collusion Behind the Settlement | 24 |

| | | 2. | The Settlement Avoids a Complex, Expensive and Lengthy Litigation | 25 |

| | | 3. | The Settlement Follows After Many Months of Contentious Litigation | 26 |

| | | 4. | The Settlement Is Fair, Reasonable and Adequate In Light of the Probability of Plaintiff's Success on the Merits and the Possible Range of Recovery | 26 |

b. The Court Has Personal Jurisdiction Over All Settlement Class Members ........... 21

1. The Legal Standard ................................................................... 21

2. Settlement Class Members Have Received Best Practical Notice of This Settlement .......................................................................... 21

C. The Settlement Is Fair, Reasonable and Adequate ................................. 23

1. There Is No Fraud or Collusion Behind the Settlement ........................... 24

2. The Settlement Avoids a Complex, Expensive and Lengthy Litigation .......................................................................... 25

3. The Settlement Follows After Many Months of Contentious Litigation .......................................................................... 26

4. The Settlement Is Fair, Reasonable and Adequate In Light of the Probability of Plaintiff's Success on the Merits and the Possible Range of Recovery .......................................................................... 26

    a. Plaintiffs Faced Substantial Hurdles that Could Prevent these Cases From Reaching a Trial ................................. 27

    b. Assuming Plaintiffs Prevailed at Trial, There are Obstacles to Recovery ................................................................... 28

    c. Assuming Plaintiffs Prevailed at Trial, They Faced Impediments on Appeal ................................................. 29

    d. The Risks and Uncertainties of Continued Litigation Favor Settlement ................................................................... 29

    e. The Settlement Provides Substantial Benefits to the Class and Is Reasonable in Light of the Range of Potential Recovery ................................................................... 30

5. The Opinions of Class Counsel, Plaintiffs, and Absent Class Members Favor Approval of the Settlement ................................. 32

V. CONCLUSION ................................................................................ 36

# TABLE OF AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................12

*Appleyard v. Wallace*,
    754 F.2d 955 (11th Cir. 1985) ...............................................................................15

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd* 889 F.2d 21 (11th Cir. 1990) ...............................28

*Bennett v. Behring Corp.*,
    96 F.R.D. 343 (S.D. Fla. 1982) ..............................................................................31

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ..................................................................2, 24, 31

*Brooks v. Auto Data Direct, et al.*,
    Case No. 03-61063-CIV-MARTINEZ (S.D. Fla.) ..........................................................4

*CV Reit, Inc. v. Levy*,
    144 F.R.D. 690 (S.D. Fla. 1992) ..............................................................................14

*Camden I Condominium Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ...............................................................................36

*Collier v. Dickenson, et al.*,
    Case No. 04-21351-CIV-GRAHAM (S.D. Fla.) ..........................................................4

*Collins v. Int'l Dairy Queen, Inc.*,
    168 F.R.D. 668 (M.D. Ga. 1996) .............................................................................14

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ................................................................................37

*Cox v. Am. Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986) .......................................................................13, 18

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) ..................................................................................33

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................................32

*Doe v. Chao*,
    540 U.S. 614, 124 S. Ct. 1204 (2004) ......................................................................6

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974) ................................................................................11, 12

*Elkins v. Equitable Life Ins. of Iowa, No.*
 No. CIVA96-296-CIV-7-17B,1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ...................37

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
 137 F.R.D. 240 (S.D. Ohio 1991) ..................................................................30

*Fabricant v. Sears Roebuck & Co.*,
 202 F.R.D. 310 (S.D. Fla. 2001) ..................................................................18

*Fidelity Federal Bank & Trust v. Kehoe*,
 126 S. Ct. 1612 (2006) ..........................................................................7, 28

*Fidelity Federal Bank & Trust v. Kehoe*,
 126 S. Ct. 1612  164 L. Ed. 2d 353 (Mar. 27, 2006) ...........................................29

*Fisher Bros., Inc. v. Mueller Brass Co.*,
 630 F. Supp. 493 (E.D. Pa. 1985) .................................................................37

*Ga. State Conference of Branches of NAACP v. Georgia*,
 99 F.R.D. 16 (S.D. Ga. 1983) .....................................................................20

*Garcia v. Gloor*,
 618 F.2d 264 (5th Cir. 1980) .....................................................................13

*Holland v. Steele*,
 92 F.R.D. 58 (N.D. Ga. 1981) .....................................................................13

*In re Agent Orange Prods. Liab. Litig.*,
 818 F.2d 145 (2d Cir. 1987) ......................................................................28

*In re Amerifirst Sec. Litig.*,
 139 F.R.D. 423 (S.D. Fla. 1991) ..................................................................14

*In re Disposable Contact Lens Antitrust Litig.*,
 170 F.R.D. 524 (M.D. Fla. 1996) ..................................................................15

*In re Domestic Air Transp. Antitrust Litig.*,
 148 F.R.D. 297 (N.D. Ga. 1993) ...................................................................34

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
 55 F.3d 768 (3d Cir. 1995) .......................................................................27

*In re Harnischfeger Indus., Inc.,*
     212 F.R.D. 400 (E.D. Wis. 2002) .................................................................32

*In re Mex. Money Transfer Litig.,*
     267 F.3d 743 (7th Cir. 2001) .......................................................................11

*In re Mexico Money Transfer Litig.,*
     164 F. Supp. 2d 1002 (N.D. Ill. 2000), *aff'd* 267 F.3d 743 (7th Cir. 2001) .....................33

*In re Motorsports Merch. Antitrust Litig.,*
     112 F. Supp. 2d 1329 (N.D. Ga. 2000) ....................................................26, 33

*In re Nissan Motor Corp. Antitrust Litig.,*
     552 F.2d 1088 (5th Cir. 1977) ....................................................................23

*In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions,*
     148 F.3d 283 (3d Cir. 1998)........................................................................22

*In re Shell Oil Refinery,*
     155 F.R.D. 552 (E.D. La. 1993)...............................................................26, 27

*In re Sunbeam Sec. Litig.,*
     176 F. Supp. 2d 1323 (S.D. Fla. 2001) ....................................................25, 32

*In re Terazosin Hydrochloride Antitrust Litig.,*
     220 F.R.D. 672 (S.D. Fla. 2004)..................................................................19

*In re U.S. Oil & Gas Litig.,*
     967 F.2d 489 (11th Cir. 1992) ....................................................................27

*Ingram v. Coca-Cola Co.,*
     200 F.R.D. 685 (N.D. Ga. 2001)...........................................................25, 31

*Kehoe v. Fidelity Federal Bank & Trust,*
     421 F.3d 1209 (11th Cir. 2005), *cert. den.*, 126 S. Ct. 1612 (2006).............................6, 28

*Kennedy v. Tallant,*
     710 F.2d 711 (11th Cir. 1983) ....................................................................16

*Kirkpatrick v. J.C. Bradford & Co.,*
     827 F.2d 718 (11th Cir. 1987) ...............................................................16, 17

*Klay v. Humana, Inc.,*
     382 F.3d 1241 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081 (2005)....................14, 18, 19

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir 1984) ...................................................................15

*Kreuzfeld A.G. v. Carnehammar*,
    138 F.R.D. 594 (S.D. Fla. 1991) ..............................................................13

*Lachance v. Harrington*,
    965 F. Supp. 630 (E.D. Pa. 1997) ............................................................33

*Leszczynski v. Allianz Ins.*,
    176 F.R.D. 659 (S.D. Fla. 1997) ..............................................................20

*Leverso v. Southtrust Bank Nat'l Ass'n*,
    18 F.3d 1527 (11th Cir. 1994) ..............................................................2, 24

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ..................................................................32

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ..................................................................23

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 660 (M.D. Ala. 1988) .....................................................28, 34

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................23

*Murray v. Auslander*,
    244 F.3d 807 (11th Cir. 2001) ............................................................12, 15

*Neenan v. Carnival Corp.*,
    199 F.R.D. 372 (S.D. Fla. 2001) ..............................................................15

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................19

*Powers v. Stuart-James Co.*,
    707 F. Supp. 499 (M.D. Fla. 1989) ..........................................................19

*Ratner v. Chem. Bank of N.Y. Trust Co.*,
    54 F.R.D. 412 (S.D.N.Y. 1972) ...............................................................30

*Reese v. Miami-Dade County*,
    209 F.R.D. 231 (S.D. Fla. 2002) ..............................................................12

*Ressler v. Jacobson,*
    822 F. Supp. 1551 (M.D. Fla. 1992) ..................................................................27, 37

*Russell v. Choicepoint, et al.,*
    Case No. 03-1994 (E.D. La.) ...........................................................................4

*Rutstein v. Avis Rent-A-Car Sys.,*
    211 F.3d 1228 (11th Cir. 2000) .......................................................................18

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio,*
    188 F.R.D. 433 (W.D. Tex. 1999) ....................................................................31

*Stoetzner v. United States Steel Corp.,*
    897 F.2d 115 (3d Cir. 1990) ...........................................................................36

*Strube v. Am. Equity Inv. Life Ins. Co.,*
    226 F.R.D. 688 (M.D. Fla. 2005) .....................................................................32

*Tapken v. Brown,*
    No. 90-691-CIV-MARCUS, 1992 WL 178984 (S.D. Fla. Mar. 13, 1992) ......................14

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A., et al.,*
    Case No. 03-21759-CIV-MARTINEZ (S.D. Fla.) ..................................................4

*Thompson v. Metro. Life Ins. Co.,*
    216 F.R.D. 55 (S.D.N.Y. 2003) .......................................................................32

*Turner v. Beneficial Corp.,*
    242 F.3d 1023 (11th Cir. 2001) .......................................................................12

*Walco Inv., Inc. v. Thenen,*
    975 F. Supp. 1468 (S.D. Fla. 1997) ..................................................................36

*Warren v. Tampa,*
    693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd* 893 F.2d 347 (11th Cir. 1989) ..........26, 32, 34

*Washington v. Brown & Williamson Tobacco Corp.,*
    959 F.2d 1566 (11th Cir. 1992) .......................................................................12

*Waters v. Intern. Precious Metals Corp.,*
    190 F.3d 1291 (11th Cir. 1999) .......................................................................36

## STATUTES

18 U.S.C. §2721(a) ............................................................................................4

18 U.S.C. §2721(b)(12) ................................................................................................16

18 U.S.C. §2721, *et seq.*..............................................................................................1

18 U.S.C. §2724(a) .......................................................................................................4

18 U.S.C. §2725(3) .......................................................................................................3

18 U.S.C. §2725(4) .......................................................................................................3

Federal Rules of Civil Procedure
     Rule 23 ..................................................................................................11, 13, 25, 26
     Rule 23(a).................................................................................11, 12, 13, 14, 16, 17
     Rule 23(a)(1) ......................................................................................................12
     Rule 23(a)(2) ......................................................................................................14
     Rule 23(a)(3) ......................................................................................................15
     Rule 23(a)(4) ......................................................................................................16
     Rule 23(b)(2).................................................................................2, 11, 12, 19, 20
     Rule 23(b)(3).................................................................................2, 11, 12, 18, 29
     Rule 23(e)...........................................................................................................23

Plaintiffs James Kehoe ("Kehoe"), Timothy Neilsen ("Neilsen") and Timothy G. Martin ("Martin") (collectively, the "Plaintiffs" or "Class Representatives") submit this memorandum of law in support of their Motion for Final Approval of Class Action Settlement.  This motion is made in reference to the Settlement Agreement and Release (the "Settlement Agreement") entered into between Plaintiffs and defendant Fidelity Federal Bank and Trust ("Fidelity" or "Defendant"), and preliminarily approved by this Court on July 31, 2006 (the "Settlement") [*Kehoe* Action, Docket Entry ("DE") No. 194; *Neilsen* Action, DE No. 12]

## I.     INTRODUCTION

The *Kehoe* Action was brought as a putative class action lawsuit under the Federal Driver's Privacy Protection Act.  *See* 18 USC §2721, *et. seq.* ("DPPA").  The DPPA provides for liability against an individual or a corporation who obtains, uses or discloses certain personal information from State Motor Vehicle Departments for a use that is not permitted under the DPPA.  The DPPA, which provides for statutory liquidated damages of $2,500 per violation, was enacted in order to prevent stalkers and others from improperly obtaining the names and home addresses of anyone who registers an automobile with their state DMV.

After the passage of the DPPA by Congress in 1996, 49 out of 50 state Departments of Motor Vehicles promptly complied with the newly enacted statute.  Florida was the only state in the United States which failed to do so.  In fact, notwithstanding the passage of the DPPA, Florida continued its practice of selling personal information to marketing companies, attorneys and others for one cent per name.  The statutory damages sought by Kehoe and members of the putative class, based upon Fidelity's violation of the DPPA, was approximately $1.4 billion dollars.  The Complaint in the *Kehoe* Action sought also an injunction requiring that Fidelity destroy the personal information of Florida drivers that it unlawfully obtained.

After extensive litigation, including a successful appeal taken by Kehoe before the Eleventh Circuit Court of Appeals, the parties entered into negotiations which resulted in a settlement of the claims being prosecuted on behalf of the Class.  The Settlement Agreement was preliminarily approved by the Court on July 31, 2006.  As set forth in the Settlement, Fidelity established a $50 million settlement fund from which payments of up to $160 each would be made to those class members who filed claims.  Fidelity agreed also to pay the additional costs of notice to the class. Furthermore, Fidelity agreed to submit to a privacy audit to ensure that all improperly obtained personal information of the class members was properly purged.  Finally, Fidelity agreed that, for settlement purposes, a class would be certified pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

The factors considered under Eleventh Circuit law in determining whether a class action settlement is fair, reasonable and adequate, and therefore appropriate for final approval, are easily satisfied in this case.  Under applicable law, the Settlement should be finally approved by the Court because of: (1) the lack of fraud or collusion behind the Settlement; (2) the high level of complexity and expense of the case, as well as the duration of continued litigation; (3) the advanced stage of the proceedings and amount of discovery completed and briefing that has taken place by the parties; (4) the numerous uncertainties and risks associated with Plaintiff's and the Class Representatives' potential for success on the merits; (5) the fact that the amount of settlement funds is within the range of possible recovery; and (6) the favorable opinions of class counsel, the Class Representatives, and absent class members about the terms of the Settlement.  *See Leverso v. Southtrust Bank Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *Bennett v. Behring Corp.*,

737 F.2d 982, 986 (11th Cir. 1984).[1]  Based on a thorough review of these factors, approval of the Settlement should be granted.

## II.      OVERVIEW OF PROCEEDINGS AND SETTLEMENT

The *Kehoe* Action was initiated on July 1, 2003 in response to Fidelity's practice of purchasing personal information of Florida motor vehicle registrants from the Florida Department of Highway Safety and Motor Vehicles ("FDHSMV") for the purpose of sending bulk mail solicitations regarding automobile financing.

### A.      Summary of Plaintiffs' Allegations

Congress enacted the DPPA in response to growing concerns regarding the actual and potential misuse of personal information contained in the drivers' license records of State motor vehicle bureaus.  Prior to the DPPA's enactment, individuals with little or no justifiable purpose could obtain the home address of any licensed driver simply by name or by providing the tag/license plate number to a local motor vehicle bureau.  This act provides, in relevant part, as follows:

> (a)      **In general.--**A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:
>
>> (1)      personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section; or

---

[1]      Citations are omitted and emphasis is added unless otherwise noted.

[3]      *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A., et al.*, Case No. 03-21759-CIV-MARTINEZ (S.D. Fla.); *Brooks v. Auto Data Direct, et al.*, Case No. 03-61063-CIV-MARTINEZ (S.D. Fla.) (currently captioned *Fresco v. Automotive Directions, et al.*); *Collier v. Dickenson, et al.*, Case No. 04-21351-CIV-GRAHAM (S.D. Fla.) (this lawsuit was brought against FDHSMV); *Russell v. Choicepoint, et al.*, Case No. 03-1994 (E.D. La.).

> (2)     highly restricted personal information, as defined in 18 U.S.C. 2725(4), about any individual obtained by the department in connection with a motor vehicle record, without the express consent of the person to whom such information applies ….

18 U.S.C. §2721(a).

> A person who knowingly obtains, discloses or uses personal information from a motor vehicle record, for purpose not permitted under this Chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in the United States District Court.

18 U.S.C. §2724(a).

After passage of the DPPA, 49 out of 50 states followed Congress' mandate by promptly restricting the dissemination of driver's license information to the public.  Florida – through the FDHSMV – was the only state in the Union that did not do so, until it enacted an amendment to its public records statute on May 13, 2004.

This amendment eventually took effect in Florida in October 2004.   In fact, until approximately April 22, 2004, the state continued to disseminate this information in violation of federal law to anyone who requested it even though it was well aware that its conduct was violative of the DPPA and was aware of Federal court litigation spawned by its conduct. [3]

Kehoe filed a putative class action against Fidelity on July 1, 2003.  Fidelity is a federally chartered banking institution which maintains numerous branches in Florida.  In or about 2000, Fidelity began to solicit Florida drivers to refinance their automobile loans with Fidelity.  However, in order to determine its appropriate target market, Fidelity made monthly requests to receive the names and addresses of Florida vehicle owners or title registrants to the FDHSMV.  Kehoe's personal information was included among the information transmitted by FHDMSV to Fidelity.  Kehoe's information was transmitted to Fidelity by the FDHSMV on January 17, 2003.

Kehoe's Complaint sought statutory liquidated damages in the amount of $2,500 as provided for by the DPPA based upon the fact that his personal information had been improperly obtained by Fidelity in connection with its marketing/advertising campaign.  Kehoe sought also equitable relief in the form of an order requiring Fidelity to destroy any personal information illegally obtained from motor vehicle records, and for "such other relief as the Court deems appropriate."  Fidelity acknowledged at deposition that, after this lawsuit was filed, it discontinued its practice of obtaining DPPA protected information from the FHDMSV as a result of the filing of the Complaint in this action.

### B.    History of the Proceedings

Kehoe filed his Complaint on July 1, 2003 [DE No. 1].  On August 22, 2003, Fidelity filed a Motion to Dismiss Kehoe's Complaint.  [DE No. 9]  The basis for the Motion to Dismiss was on the same grounds upon which Fidelity later based its Renewed Motion for Summary Final Judgment, [DE No. 65], that became the subject of Kehoe's appeal to the Eleventh Circuit Court of Appeals. *See Declaration of Roger Slade in support of Motion for Final Approval of Class Action Settlement* ("Slade Declaration"), ¶2.[4]  The District Court denied Fidelity's Motion to Dismiss, [DE No. 50], and allowed Kehoe to take discovery from Fidelity and other non-parties.  *Id.*

On October 30, 2003, Kehoe filed a Motion for Class Certification [DE No. 26]. On Fidelity's motion, however, the District Court entered an Order deferring the hearing and any ruling on class certification pending the outcome of Fidelity's pending Renewed Motion for Summary Judgment [DE No. 81].  *Slade Declaration*, ¶3.

---

[4]    The Slade Declaration is being filed contemporaneously herewith**,** and is incorporated herein by reference.

In the interim, the United States Supreme Court issued its opinion in *Doe v. Chao*, 540 U.S. 614, 124 S. Ct. 1204 (2004). *Slade Declaration*, ¶4. On June 14, 2004, the District Court issued its Order Granting Defendant's Renewed Motion for Summary Final Judgment, [DE No. 107] (the "Order" or "Opinion") in this case based, in large part, on the Supreme Court's decision in *Chao*. *See Kehoe v. Fidelity Federal Bank & Trust*, --- F. Supp. 2d. ---, 2004 WL 1659617 (S.D.Fla. 2004). Specifically, the District Court cited the Supreme Court's decision in *Chao*, where the Court noted that "it is easy to imagine certain pecuniary expenses that might turn out to be reasonable in particular cases but fall well short of [the statutory minimum amount of actual damages]." *Id*. at *8. (citing *Chao*, 124 S. Ct. at 1211). The District Court found that these statutory minimum amounts were designed to encourage people with "minor actual damages" to file complaints against defending parties, and were "not designed to allow those suffering no actual damages to file claims." *Id*. In ruling that Kehoe was required to show actual damages in order to recover liquidated damages under DPPA, the District Court granted Fidelity's Renewed Motion for Summary Judgment. *Id.*

Kehoe appealed the Order of this Court to the Eleventh Circuit Court of Appeals on June 28, 2004 [DE No. 104]. *Slade Declaration*, ¶5. On August 25, 2005, the Eleventh Circuit issued its opinion, which was eventually styled as *Kehoe v. Fidelity Federal Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005), *cert. den.*, 126 S. Ct. 1612 (2006) (the "*Kehoe* Opinion"). *Id.* In reversing the Order of the District Court, the *Kehoe* Opinion opined, for the first time under the DPPA, that it was not necessary for a plaintiff in a DPPA case to prove actual damages before it was entitled to statutory liquidated damages.

On January 12, 2006, following remand from the Eleventh Circuit, the District Court reset the case for trial to be held in August, 2006 [DE No. 123]. *Slade Declaration*, ¶6. On January 17,

2006, Fidelity filed a Petition for Writ of Certiorari to the United States Supreme Court, which was denied on March 27, 2006. *Fidelity Federal Bank & Trust v. Kehoe*, 126 S. Ct. 1612 (2006).

On April 27, 2006, the District Court heard argument on both Kehoe's Motion for Summary Judgment and Fidelity's Second Renewed and Supplemental Motion for Summary Judgment (DE No. 135]. *Slade Declaration*, ¶7.   On June 9, 2006, plaintiffs Neilsen and Martin filed the *Neilsen* action, and moved to consolidate the *Neilsen* action with the *Kehoe* action.   *Id.*

On July 12, 2006, while the Court was still considering the parties' respective motions for summary judgment, Court entered a stay of proceedings to allow the parties, who were by then in settlement negotiations, to finalize a stipulation for settlement [DE No. 189].   *Id.*  On July 27, 2006, Plaintiffs moved the Court for entry of an order preliminarily approving the settlement agreement [DE No. 193].   *Id.* at 8.   On the following day, Fidelity filed a response in support of Plaintiffs' Motion for preliminary approval of the settlement agreement [DE No. 194].   *Id.*  On July 31, 2006, the Court preliminarily approved the class action settlement entered into between the parties.   *Id.*

### C.    Summary of Settlement Negotiations and Settlement

Throughout the pendency of these cases, the parties periodically discussed the possibility of resolving the actions through settlement. *Id.* at 9.   Settlement negotiations began at the first of three mediation conferences held on May 26, 2004 with retired Judge Herbert Stettin, which was unsuccessful despite the fact that the parties negotiated for in excess of ten (10) hours.   *Id.*

On August 12, 2004, while the *Kehoe* Action was pending before the Eleventh Circuit Court of Appeals, a telephonic mediation conference was held before Gary F. Canner at the Kinnard Mediation Center.   *Id.* at 10.   Again, the mediation was unsuccessful.   *Id.*

Following oral argument before the Eleventh Circuit, on June 22, 2005, the Eleventh Circuit issued an Order *sua sponte* directing the parties to attend yet another mediation conference.   *Id.* at 11.   The court's order stated: "After oral argument, the Court is of the opinion that this appeal likely

can and should be settled.  The Court refers the appeal to the Kinnard Mediation Center for settlement discussions under F.R.A.P. 33 and 11th Cir. R. 33-1." *Id.*  Accordingly, on August 22, 2005, the parties traveled to Miami and participated in the court-ordered mediation. *Id.*  The parties, however, were again unsuccessful in resolving the litigation. *Id.*

Over the course of the next nine months, Kehoe and Fidelity fully briefed and argued Fidelity's Second Renewed Motion For Summary Judgment, Kehoe's Motion for Summary Final Judgment and fully briefed Kehoe's Renewed Motion For Class Certification. *Id.* at 12. Accordingly, by the summer of 2006, the parties and their counsel were well aware of the strengths and weaknesses of their respective cases. *Id.*

On June 9, 2006, plaintiffs Neilsen and Martin filed the *Neilsen* action, and moved to consolidate the *Neilsen* action with the *Kehoe* action.

Thereafter, on June 23, 2006, following discussions with certain of Plaintiffs' counsel, counsel for Fidelity advised counsel for Plaintiffs, that it was interested in meeting with all of the parties in the two cases, and, in that regard, requested that all Plaintiffs' counsel and all Plaintiffs executed a non-disclosure agreement which would permit the disclosure of information of a highly confidential nature in connection with settlement negotiations. *Id.* at 14.  All parties executed this agreement, which concerned the fact that National City Corporation ("National City"), a large Midwest-based banking institution, was in negotiations to buy Fidelity's parent company. *Id.*

On July 5, 2006, a settlement meeting was held at the law offices of Fidelity's counsel. *Id.* at 15.  After intense negotiations, a settlement was reached between the parties pursuant to which Fidelity or its successor agreed to create a common fund of $50 million, from which all 565,000 members of the class could submit claims to receive up to $160 each and all costs of notice, claims administration and attorneys' fees and expenses would be paid by Fidelity. *Id.*

8

Between July 6, 2006 and July 21, 2006, Plaintiffs and their counsel and Fidelity and its counsel reviewed and revised multiple drafts of a Settlement Agreement, notices to be sent to class members and published in newspapers, and draft proposed orders. *Id.* at 16. On July 21 and July 24, 2006, the final version of the Settlement Agreement was executed by all parties. *Id.*

## III.     SUMMARY OF SETTLEMENT AGREEMENT

The Settlement Agreement between the Class Representatives and Fidelity, which was preliminarily approved by this Court on August 1, 2006, encompasses a Settlement Class that includes:

All natural persons who meet all of the following criteria:

(i)      whose personal information was provided by the FDHSMV to the Bank in between May 1, 2000 and September 30, 2003;

(ii)     who are not and have not been employed by the Bank [Fidelity Federal] or any of its subsidiaries, parents (or their subsidiaries) or affiliates at any time since May 1, 2000; and

(iii)    who are not members of the federal judiciary or within the third degree of relationship to a member of the federal judiciary, or the spouses of such persons.

*See* Preliminary Approval Order at 2, ¶2 (conditionally certifying Class).

The Settlement Agreement provides the Class with two substantial benefits – monetary relief in the form of up to $160 each, and injunctive relief that addresses the purported wrongful conduct that is at the heart of Plaintiffs' claims, and preserves the important privacy interests of the Class.

### A.     Cash Payments to Settlement Class Members of $160 Each for Alleged Violations of Their Privacy

The Settlement provides that Fidelity will establish up to a $50 million settlement fund, from which payments will be made on a claims-made basis to Class members who elect to participate and who do not opt-out from the Class, in accordance with the procedures set forth in Section 4 of the Settlement Agreement. As reflected therein, every Class member who makes a claim will be paid

their pro rata share of the Settlement Fund, less the costs of claims administration, notice and Plaintiffs' counsel's attorneys' fees and costs, up to $160.

> **B.    Fidelity's Agreement to Undergo a Privacy Audit to Ensure the Destruction of All Improperly Obtained Personal Information of Class Members – Permanent Injunctive Relief**

The Settlement before the Court for final approval includes also injunctive relief against Fidelity to preserve the important privacy rights of the Class by ensuring that the personal and private information of Class members, alleged to have been obtained and used in violation of the DPPA, has been completely destroyed as verified by an expert data removal professional conducting an audit on Fidelity and, to the extent feasible, its direct mail agent, The Bureau.

> **C.    Other Payments Made on Behalf of Class Members**

In addition to the monetary and injunctive relief called for in the Settlement discussed above, Fidelity has also agreed to pay for the costs of notice to class members, a significant expense that the Plaintiffs otherwise would be required to shoulder, *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974), plus the fees and expenses of the Claims Administrator, and any fees that this Court may award the attorneys who have represented the Class.  *See* Settlement Agreement, ¶4.c.  Those payments are an additional value to the Class that this Court may properly consider in assessing the fairness of the Settlement.  *See In re Mex. Money Transfer Litig.*, 267 F.3d 743, 746 (7th Cir. 2001).

> **D.    Class Certification**

As part of the Settlement, Fidelity has agreed also to the certification of the Class, for Settlement purposes, pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. The benefit of class certification is easily measured – it permits a large group of aggrieved persons to have their rights vindicated in one forum.  In the Court's preliminary approval order dated August 1, 2006, the Court preliminarily certified the Class and appointed the named Plaintiffs to serve as Class representatives.

## IV.     ARGUMENT

### A.     A Class Action Should be Certified for Settlement Purposes

Initially, in reviewing a proposed class action settlement, the Court must determine whether the action is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  This means that the Court must examine the class to determine if it meets the criteria for certification under Rule 23.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Here, it is clear that these Actions easily meet the requirements of Rules 23(a), (b)(2) and (b)(3), and should be certified for settlement purposes.  Notably, Fidelity has already agreed to the certification of a Class, and this Court has preliminarily certified the Class.

### 1.     Standards for Class Certification

To qualify for class certification, the plaintiff must prove the four requirements of Rule 23(a) and at least one of the standards of Rule 23(b) that is appropriate to the relief sought.  *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir. 2001).  Any questions concerning the certification of a class are left to the broad discretion of the district court.  *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).  For the purposes of deciding the question of class certification, the Court must take the factual allegations stated in the Complaint as true.  *See Eisen*, 417 U.S. at 177 ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); *Reese v. Miami-Dade County*, 209 F.R.D. 231, 232 (S.D. Fla. 2002) ("Class certification is strictly a procedural matter and the merits of the claim at stake are not considered when determining the propriety of the class action vehicle.")

The four prerequisites of Rule 23(a) have commonly been referred to as: numerosity, commonality, typicality and adequacy of representation.  *Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001).  Rule 23(b)(3) requires that common questions of law or fact predominate over

individual questions, and that class treatment is superior to other available methods of adjudication. Rule 23(b)(2) requires that the defendant's common conduct toward each member of the Class renders final injunctive relief appropriate.

### 2.    Numerosity

The Class satisfies Rule 23(a)(1), which requires that a class be so numerous that joinder of all class members would be impracticable.  The Eleventh Circuit has held that while there is no fixed rule regarding numerosity "generally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors."  *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986); *see also Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991) (certifying a class of approximately 130 investors, and noting that the numerosity requirement is satisfied with as few as 25 or 30 members).  The proper focus, however, is not on numbers alone, but on "whether joiner of all members is practicable in view of the numerosity of the class and all other factors." *Holland v. Steele*, 92 F.R.D. 58, 63 (N.D. Ga. 1981).  The "[p]raticabilty of joiner depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980).

Here, there are nearly 600,000 members of the Class, each of whom was provided with notice of the Settlement through either direct mail or publication in various large Florida newspapers.  Thus, joinder of all of the potential claims, given the vast number of potential plaintiffs and their dispersion throughout Florida and possibly elsewhere, would be impracticable.  Clearly, these Actions satisfy the numerosity requirement of Rule 23(a).

### 3.    Commonality

The second requirement of Rule 23(a), commonality, requires an assessment of whether the plaintiff's claims raise ***at least one*** question of law or fact common to the members of the Class.

Commonality will be satisfied where questions of law refer to standardized conduct by the defendants toward members of the proposed class. *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991). Establishing commonality, however, does not require complete identity of the plaintiffs' claims. *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992). More specifically, "it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081 (2005). Factual differences concerning treatment or damages, however, will not defeat a finding of commonality. *Tapken v. Brown,* No. 90-691-CIV-MARCUS, 1992 WL 178984, at *58 (S.D. Fla. Mar. 13, 1992). Factual distinctions that may exist are "far less important than the 'common issues' bearing on the existence of a common scheme of misrepresentations and omissions." *Id*. at *59. "Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Id.*[5]

The Actions satisfy the commonality requirement of Rule 23(a)(2) in that the claims raise several questions of law or fact common to the members of the Class, including the following:

(a)     Whether Fidelity knowingly obtained, disclosed or used individuals' "personal information" and/or "highly restricted personal information" contained in the motor vehicle records of FDHSMV, for marketing and other purposes not permitted under the DPPA;

---

[5]     Indeed, "the Rule 23(a) requirement of commonality is not high, requiring only that resolution of the common questions affect all or a substantial number of the class members." *Collins v. Int'l Dairy Queen, Inc.,* 168 F.R.D. 668, 674 (M.D. Ga. 1996).

(b)    Whether Fidelity or the state of Florida received the express written consent of Class members, prior to Fidelity obtaining their "personal information" and/or "highly restricted personal information" contained in motor vehicle records kept by FDHSMV; and

(c)    To what extent Fidelity is liable to Plaintiffs and Class members for damages and equitable relief under the DPPA.

These allegations clearly demonstrate that the members of the Class were all aggrieved by a common course of conduct (*i.e.*, Fidelity's violation of the DPPA through its purchase and use of personal information from motor vehicle records held at the FDHSMV), and their claims are based on the same legal theories. *See Murray*, 244 F.3d at 811 ("Under the commonality requirement, a class action must involve issues that are susceptible to class-wide proof").

### 4.    Typicality

The typicality requirement of Rule 23(a) ensures that the class representatives have the same interests as the class.  The typicality requirement is satisfied when there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class."  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir 1984).  The typicality requirement, like commonality, is not demanding.  *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).  Similarly, typicality does not require that all putative class members share identical claims.  *Neenan v. Carnival Corp.*, 199 F.R.D. 372 (S.D. Fla. 2001).  It is only required that the claims of the named plaintiffs have the same essential characteristics as the class at large because "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences."  *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

Here, there can be no question that the claims raised in the complaints satisfy the typicality requirement of Rule 23(a)(3).  Plaintiffs and the other Class members seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiffs'

14

claims and those of the Class.  Plaintiffs and the Class seek relief under the DPPA for Fidelity's alleged violation of 18 U.S.C. §§ 2721(b)(12) and 2724(a) of the Act, which prohibit persons from knowingly obtaining, disclosing or using personal information, from a motor vehicle record, for bulk mail solicitation purposes without first obtaining the express consent of the person to whom such personal information pertains.  *See* Declaration of James Kehoe ("Kehoe Decl."), ¶19; Declaration of Timothy Neilsen ("Neilsen Decl."), ¶¶5-6; and Declaration of Timothy G. Martin ("Martin Decl."), ¶¶5-6, attached hereto as **Composite Exhibit A.**

Since Plaintiffs seek to prove that Fidelity "committed the same unlawful acts in the same methods against an entire class . . . [which means that] all members of this class have identical claims," the typicality requirement of Rule 23(a)(3) is satisfied.  *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

**5.    Adequacy**

The final prerequisite of Rule 23(a) requires a showing that the representative parties will fairly and adequately protect the interests of the class. What constitutes adequate representation is a question of fact that depends upon the circumstances of each case and is entrusted to the discretion of the trial court.  *See* 7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 1765, at 271 (1986); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987).  The adequacy requirement of Rule 23(a)(4) encompasses two requirements: (1) the proposed representatives have interests in common with, and not antagonistic to, the interests of the class; and (2) plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation.  *Kirkpatrick*, 827 F.2d at 726.

Here, Plaintiffs satisfy both prongs of the adequacy test of Rule 23(a)(4).  Plaintiffs do not have any interests antagonistic to the Class, and they are willing and able to, and in fact have, vigorously prosecuted these actions on its behalf.  Proof of Plaintiffs' claims will establish the same

issues of law and fact as the claims of the Class as a whole.  *See* Kehoe Decl., ¶¶18-19; Neilsen

Decl., ¶¶10-11; and Martin Decl., ¶¶10-11**.**

Concerning the adequacy of counsel, the Eleventh Circuit has noted that "adequate class

representation generally does not require that the named plaintiffs demonstrate to any particular

degree that individually they will pursue with vigor the legal claims of the class."  *Kirkpatrick*,

827 F.2d at 727.  Instead, "where the class is represented by competent and zealous counsel, class

certification should not be denied simply because of a perceived lack of subjective interest on the

part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated

to their attorneys the conduct of the case."  *Id.* at 728.  Plaintiffs and the Class are represented by

highly competent counsel, who possess substantial experience litigating class action lawsuits on

behalf of aggrieved consumers and are adequately prepared to prosecute this action.[6]  In addition,

Plaintiffs have demonstrated that they have a significant interest in remedying the alleged

wrongdoing perpetrated against Florida motor vehicle registrants by Fidelity.

### 6.     Class Certification Is Appropriate Under Rule 23(b)(3)

In addition to the requirements of Rule 23(a), these Actions also satisfies the requirements of

Rule 23(b)(3), which states that common questions of law or fact predominate over individual

questions, and that class action treatment is superior to other available methods of adjudication.

---

[6]     Plaintiffs' counsel has demonstrated familiarity with this area of law in this District.  The firm resumes of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin"), Aronovitz Trial Lawyers ("Aronovitz"), and James, Hoyer, Newcomer & Smiljanich, P.A. ("James Hoyer") are attached as Exhibits A-C to the Declaration of Paul J. Geller in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Geller Decl.") filed with the Court contemporaneously herewith.  *See also http://www.pathmanlewis.com/.*

### a.    Predominance

In *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228 (11th Cir. 2000), the Eleventh Circuit held that common questions of law or fact predominate over individualized questions when the issues in the class action are subject to generalized proof and thus applicable to the class as a whole, and that predominates over those issues that are subject only to individualized proof. *Id.* at 1233. Stated otherwise, in deciding whether common questions predominate under Rule 23(b)(3), courts generally focus on whether there are common liability issues that may be resolved efficiently on a class-wide basis. *See, e.g.*, *Klay*, 382 F.3d at 1269. This rule, however, does not require a complete absence of individual issues. *Cox*, 784 F.2d at 1546.

Here, the predominant issue in these Actions relates to Fidelity's liability for its practice of purchasing motor vehicle information of Florida residents from the FDHSMV. Resolution of this issue will predominate over any individual issues that may exist with respect to the Class, as only one body of evidence will be necessary to prove liability and mini-trials will not be required.

### b.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action

Rule 23(b)(3) lists four factors that the court should consider in taking into account the superiority issue:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular form; (D) the difficulties likely to be encountered in the management of a class action.

*See* Fed. R. Civ. P. 23(b)(3)(A)-(D). Additionally, in determining superiority, the "inability of the poor or uninformed to enforce their rights" and "the improbability that large numbers of class members would possess the initiative to litigate individually" are proper considerations. *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310 (S.D. Fla. 2001).

A review of the factors listed in Rule 23(b)(3) reveals that a class action is the superior method of adjudicating this controversy. There is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation, so the first factor does not support denying class certification. Similarly, there is nothing to indicate that any individual members or other classes have filed suit with respect to the controversy at hand against.

In addition, it is clearly desirable to litigate the Class members' claims in a single forum. *Klay*, 382 F.3d at 1271. First, class actions "offer substantial economies of time, effort, and expense for the litigants . . . as well as for the [c]ourt." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (holding, separate trials for claims that could be tried together would be costly, inefficient, and would burden the court system by forcing individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts).

Second, the Supreme Court has recognized that "[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). As set forth herein, Fidelity obtained and used the personal information from Florida motor vehicles records of nearly 600,000 Florida residents during the Class Period. It would be extremely costly for each individual aggrieved Florida resident to proceed against a large corporation such as Fidelity. *See Powers v. Stuart-James Co.,* 707 F. Supp. 499, 504 (M.D. Fla. 1989) ("[i]t appears to the Court that the judicial system, the potential class members, the litigants, counsel for the parties, and the public will all benefit from class certification because the time and money of all parties will be efficiently used."). Thus, in light of the number of potential claimants and the cost and time necessary to litigate each separate claim, it is desirable to concentrate these actions in this forum in preventing the duplication of effort and possible inconsistent results.

18

### 7.     Class Certification Under Rule 23(b)(2) Is Appropriate

Lastly, the Class Representatives seek to certify, for settlement purposes, the Class under Rule 23(b)(2), which provides that an action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  The two factors that must be present in order for an action to fall within this provision of Rule 23 are: (1) the opposing party's conduct or refusal to act must be "generally applicable" to the class, and (2) final injunctive or corresponding declaratory relief must be requested for the class.  *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 673 (S.D. Fla. 1997).

### a.     Fidelity's Conduct Is "Generally Applicable" to the Class

The term "generally applicable" does not require "that the party opposing the class . . . act directly against each member of the class. The key is whether his actions would affect all persons similarly situated so that his acts apply generally to the whole class." 7A Wright, Miller, & Kane, *supra*, § 1775, at 448.   Thus, "[a]ll the class members need not be aggrieved by or desire to challenge the defendants' conduct in order for one or more of them to seek relief under Rule 23(b)(2)." *Ga. State Conference of Branches of NAACP v. Georgia*, 99 F.R.D. 16, 35 (S.D. Ga. 1983).  "What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class."  *Id*. at 35-36.

Here, Fidelity is alleged to have acted in a consistent manner toward all members of the Class, thereby making injunctive relief appropriate.  By failing to comply with the mandates of the DPPA, and by systematically violating the DPPA over a long period of time, Fidelity acted, or refused to act, on grounds generally applicable to all Class members.  Under such circumstances, pursuit of injunctive relief by certain members of the Class is warranted to ensure that no future

violations of the DPPA occur by Fidelity with respect to Class members' personal information improperly obtained from the FDHSMV.

### b.   Final Injunctive Relief Is Requested

Plaintiffs seek a permanent injunction requiring Fidelity and, to the extent feasible, its agent, The Bureau, to undergo a privacy audit and ensure the complete and total destruction of Class members' information obtained from the FDHSMV.  Fidelity's uniform conduct toward Class members makes certification under Rule 23(b)(2) appropriate.  In connection with the Settlement, Fidelity has agreed to entry of a permanent injunction that requires Fidelity to:

> (a)   Certify in writing and under oath to Plaintiffs' counsel no less than five days prior to the final hearing date that it did not keep or maintain any data it may have obtained from motor vehicle records which the FDHSMV provided to the Bank between May 1, 2000 and September 30, 2003;

> (b)   Not disclose any data it may have obtained from motor vehicle records which the FDHSMV provided to Fidelity between May 1, 2000 and September 30, 2003;

> (c)   Not sell any data obtained from the motor vehicle records which the FDHSMV provided to Fidelity between May 1, 2000 and September 30, 2003;

> (d)   Certify in writing and under oath to Plaintiffs' counsel no less than five days prior to the final hearing date that it and its agents and contractors have destroyed all Class member records obtained from FDHSMV or certify that it no longer has any such records in its possession; and

> (e)   Agree to a privacy audit to be completed within six months of the entry of the Final Order and Judgment with respect to Class member records provided to Fidelity by the FDHSMV, and use reasonable efforts to assist in the effort to conduct a privacy audit of its contractor, The Bureau, to be completed within six months of the entry of the Final Order and Judgment.

*See* Settlement Agreement, ¶8.

B.     **The Court Has Personal Jurisdiction Over All Settlement Class Members**

   1.     **The Legal Standard**

This Court has personal jurisdiction over the Class Representatives. The Court also has personal jurisdiction over all members of the Class. In *Phillips Petroleum*, 472 U.S. at 797, the Supreme Court declared:

> In this case we hold that a forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant. If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Id.* at 811-12 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950));

*see also In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998) ("the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class").

   2.     **Settlement Class Members Have Received Best Practical Notice of This Settlement**

In this case, the notice provided to Class members, combined with the opportunities to opt-out and object at the hearing on the Motion for Final Approval, fully satisfy due process requirements for personal jurisdiction over individual class members. As described in the Affidavit of RSM McGladrey, Inc. in Connection with Notice by Mailing and Notice by Publication ("RSM

21

Aff."),[7] [*Kehoe* Action, DE No. 200; *Neilsen* Action, DE No. 14], there was an effort on the part of the parties to inform Class members in the best manner practicable of the details of the Settlement and their rights to opt-out or object.  Over 600,000 detailed, long-form notices (the form of which was previously approved by the Court pursuant to its Preliminary Approval Order) have been sent to Class members, at their last known addresses as provided by the FDHSMV to Plaintiffs' counsel, by U.S. mail, first-class, postage pre-paid.  RSM Aff., ¶¶2-3.  The summary notice (the form of which was also approved by the Court) was published in the *Palm Beach Post*, *Port St. Lucie Post*, *Ft. Lauderdale Sun-Sentinel*, *Miami Herald* (Broward edition) and *Vero Beach Press Sentinel* within 10 days after mailing of the class notices.  RSM Aff., ¶4.  Claim forms to be completed by Class members wishing to participate in the Settlement were provided to them with the mailed notice, and were also available from RSM by either requesting a claim form by mail or visiting RSM's website for the settlement of these cases: *http://www.claimsinformation.com/FidelityDPPASettlement.htm*. The address of the Settlement Administrator was provided to Class members to mail completed claim forms.  Under these circumstances, the notice of the Settlement of this class action satisfies due process requirements and Rule 23(e).  *See Mullane*, 339 U.S. at 314 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections."); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977) ("Notice in a class suit must present a fair recital of the subject matter and proposed terms and [give] an opportunity to be heard to all class members."); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977) (notice to

---

[7]        The RSM Affidavit is attached hereto as **Exhibit B**.

class members must describe "the substantive claims . . . [and] contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment").

### C.    The Settlement Is Fair, Reasonable and Adequate

As described at length in Part III, *supra*, the Settlement provides substantial benefits to the Class members that are closely tailored to the allegations in the Complaint.  In addition to providing direct monetary compensation to Class members of potentially upwards of $50 million, less notice and claims administration fees and attorneys' fees and costs, or, more specifically, up to $160 per Class member, the Settlement redefines Fidelity's relationship with Class members in a way that will directly benefit Florida residents for years to come.  The Settlement stops Fidelity from using any of the ill-gotten personal, private information for any purpose, and ensures the destruction of such information.  In a day-and-age of rampant privacy concerns, this Settlement is exceptional. Moreover, the Settlement avoids the delays, expense, and risk to Class members of continued litigation.

Courts in this Circuit evaluate the following factors to determine whether a class action settlement is fair, reasonable and adequate:

(a)    the existence of fraud or collusion behind the settlement;

(b)    the complexity, expense, and likely duration of the litigation;

(c)    the stage of the proceedings and the amount of discovery completed;

(d)    the probability of plaintiff's success on the merits;

(e)    the range of possible recovery; and

(f)    the opinions of class counsel, class representatives, and absent class members.

*See Leverso*, 18 F.3d at 1530 n.6; *Bennett*, 737 F.2d at 986.

### 1.     There Is No Fraud or Collusion Behind the Settlement

Class counsel and counsel for Fidelity and National City conducted arms-length negotiations for many months, debating every key term of the Settlement Agreement. ***The Class was represented by experienced counsel at these negotiations.***  Four law firms worked in concert to achieve the settlement at the July 5th settlement conference on behalf of the class – Pathman Lewis which originated the litigation, Lerach Coughlin which acted as co-counsel to the class with Pathman Lewis which was has substantial class action experience, and Aronovitz and James Hoyer who have been at the forefront of DPPA litigation from its inception.  There was no fraud or collusion in connection with this Settlement.  Indeed, Fidelity defended these Actions vigorously, as is demonstrated from, among other things, appeals to the Eleventh Circuit and the United States Supreme Court, the docket sheets and the substance of their filings in these Actions.  Indeed, as the Court is aware, the parties sought two extensions of time to file settlement papers with the Court, which were the direct result of ongoing negotiations between the parties concerning the key terms of the Settlement.  Moreover, the extensive negotiations between the parties and substantial benefits to the Class, including permanent injunctive relief against Fidelity, establish on their face that the Settlement is the result of a *bona fide* compromise.  In these circumstances, there is no basis for any finding of fraud or collusion behind the Settlement.  *See*, *e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement, and there is no suggestion of collusion"); *Warren v. Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of the settlement for an extended period of time"), *aff'd* 893 F.2d 347 (11th Cir. 1989).

## 2.     The Settlement Avoids a Complex, Expensive and Lengthy Litigation

This case involved multiple disputed legal issues, including, among others, the construction of the DPPA, a statute that has not been considered by many courts since its enactment, and the propriety of class certification under Rule 23, particularly where the DPPA provides for an award of $2,500 in liquidated damages even in the absence of a showing of actual damages. Each of these issues did and, if the Settlement were not approved and this case were to continue, would continue to undoubtedly consume huge quantities of time, money and judicial resources. Accordingly, even if Plaintiffs were ultimately to prevail in these Actions (which Fidelity contests), that success would bear fruit for the Class only after years of trial and appellate proceedings and the expenditure of many hundreds of thousands, if not millions, of dollars in both legal fees and costs by both sides. By contrast, the Settlement provides the Class with millions of dollars in benefits and an assurance regarding the status of their personal, private information without the expense, uncertainty, and substantial delay of future litigation. As the court aptly stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

*Id.* at 560. *See also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive"). In light of the costs, uncertainties and delays of litigating this case through pretrial motions and, should Plaintiffs' claims ultimately reach the trier of fact, the "unpredictability of a lengthy and complex . . . trial," – to say nothing of further appellate activity – "the benefits to the class of the present settlement become all the more apparent." *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

### 3. The Settlement Follows After Many Months of Contentious Litigation

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). This case has been litigated intensely for many years, and a trial period was scheduled to commence on August 7, 2006. [*Kehoe* Action, DE No. 123]. During this period, the claims were prosecuted vigorously. Among other things, Kehoe was successful in reversing this Court's decision granting summary judgment for Fidelity as to the actual damages issue, was successful in persuading the Supreme Court to deny Fidelity's Petition for Writ of Certiorari, and had renewed his motion for class certification pursuant to Rule 23. [*Kehoe* Action, DE Nos. 119, 126, 153]. For its part, Fidelity filed multiple motions for summary judgment, based on what it believed to be correct interpretations of the DPPA, [*Kehoe* Action, DE Nos. 9, 65, 121], and further vigorously opposed class certification. [*Kehoe* Action, DE No. 133]. Discovery was complete by the time the Settlement was reached between the parties. By any practical measure, the course of this litigation and the motions filed by both sides, over a lengthy period of time, has been more than sufficient for the parties to be able to "determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation." *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988).

### 4. The Settlement Is Fair, Reasonable and Adequate In Light of the Probability of Plaintiff's Success on the Merits and the Possible Range of Recovery

The reasonableness of a settlement can be determined "only in light of the strength of the case presented by the plaintiffs." *See In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 145, 149-51 (2d Cir. 1987). Chief Judge King of the Southern District of Florida, in *Behrens v. Wometco Enters.*,

*Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd* 889 F.2d 21 (11th Cir. 1990), has pointed out that, depending on the circumstances, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* While Plaintiffs believe that they have built strong cases and would have prevailed at summary judgment or at trial, Fidelity has briefed and advanced substantial arguments that Plaintiffs understand that, if credited by this Court or on appeal, would hinder or eliminate their ability to recover anything at all. Fidelity believes that these arguments raise a significant possibility that Plaintiffs would recover nothing if this litigation were to continue without settlement. Balancing the uncertainties of litigation against the immediate monetary and equitable benefits to Plaintiffs and the Class through the Settlement, clearly demonstrates the fairness, reasonableness and adequacy of the Settlement. In addition, even if Plaintiffs were successful at trial, they might not have been able to have obtained the important injunctive relief that provides prospective benefits on par with the relief provided by the Settlement.

### a. Plaintiffs Faced Substantial Hurdles that Could Prevent these Cases From Reaching a Trial

There are a number of material events that could have prevented these cases from even being tried. In particular, at the time the Settlement Agreement was executed, Fidelity had a motion for summary judgment pending in the *Kehoe* Action arguing for judgment against Kehoe on the ground that Kehoe could not prove that Fidelity "knowingly" obtained from the FDHSMV and/or used Kehoe's and the Class' personal information for an improper purpose, and thus did not violate the DPPA. In addition, Fidelity filed an opposition memorandum to Kehoe's Renewed Motion for Class Certification, arguing that Kehoe could not overcome multiple hurdles to class certification, including that a class action was not the superior method of adjudicating these controversies since recovery by a class would "annihilate" Fidelity. If accepted by the Court, either of these positions could result in effectively zero recovery for the Class. Plaintiffs strongly contend that Fidelity

violated the DPPA and that they would ultimately have prevailed on every issue raised by Fidelity. Nevertheless, Plaintiffs recognize that these are sophisticated and substantial legal challenges that, if accepted by this Court and/or on appeal, could have been dispositive and essentially ended this litigation prior to trial.

### b.   Assuming Plaintiffs Prevailed at Trial, There are Obstacles to Recovery

Assuming that Plaintiffs prevailed on the issues described above, and advanced their cases to trial, there would remain substantial obstacles to recovery. Fidelity contends that it has factual and legal defenses to the claims of the Class, including, among others, that: (i) Fidelity did not violate the DPPA because it did not knowingly obtain and/or use the Class' personal information for a purpose not permitted under the Act; (ii) no member of the Class could allege or prove that they suffered any actual damages from the alleged violation of the DPPA;[8] and (iii) Kehoe does not have standing to represent the Class. Plaintiffs, of course, vehemently dispute the relevance or efficacy of these defenses, but the possibility of these impediments to recovery by the Class strongly militate in favor of the Settlement, which provides clear and certain benefits to the Class. *See*, *e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (citing the "very real potential that the [c]lass could come away with a long expensive trial with nothing," the court rejected the argument "that the Class should get more").

Further, Fidelity possessed numerous arguments as to the propriety of class certification, including that Kehoe was not an adequate class representative, [*Kehoe* Action, DE No. 133], and

---

[8]     Although the Eleventh Circuit rejected this argument in *Kehoe v. Fidelity Federal Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005), two Justices of the Supreme Court expressed a willingness to take up this precise issue. *Fidelity Federal Bank & Trust v. Kehoe*, 126 S. Ct. 1612 (Mem), 164 L. Ed. 2d 353 (Mar. 27, 2006) (Scalia, J., *concurring*).

that a class action is not the superior method of adjudicating these individual claims (Rule 23(b)(3)) in light of the potential for a massive damages award against Fidelity.  Plaintiffs, for their part, contend that both of these arguments lack merit and would have been rejected by the Court.  Among other things, Plaintiffs would cite to the record before the Court demonstrating that Kehoe does have standing to represent the Class, and that "annihilation" defense set forth in *Ratner v. Chem. Bank of N.Y. Trust Co.*, 54 F.R.D. 412 (S.D.N.Y. 1972), ignores the contrary views in Eleventh Circuit precedent, a plethora of other court decisions, including the Supreme Court, and the leading class action scholars.  Nevertheless, the possibility that a class would not have been certified by this Court remains a possibility, and, in light of the "abuse of discretion" standard on appeal for such decisions, could have essentially ended these cases.

> **c.     Assuming Plaintiffs Prevailed at Trial, They Faced Impediments on Appeal**

Assuming Plaintiffs prevailed and obtained a recovery as a result of a trial, Fidelity would likely appeal any adverse judgment – which creates further uncertainty in terms of the possibility of any ultimate recovery in this case.  Furthermore, such an appeal would result in a significant time delay in obtaining a final resolution to this litigation.  Moreover, were Plaintiffs to have obtained a judgment awarding many millions of dollars in liquidated damages to the Class, the possibility that Fidelity would then file for bankruptcy protection certainly existed.

> **d.     The Risks and Uncertainties of Continued Litigation Favor Settlement**

Overall, Plaintiffs and Fidelity would face significant risks and uncertainties in continuing this litigation.  These uncertainties weigh heavily in favor of settlement.  *See*, *e.g.*, *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999) (finding that "the substantial risk to each side as to the ultimate outcome strongly favors settlement").  For example, the trial court in *Bennett* concluded that a settlement fund of $675,000

29

was fair and adequate, despite the plaintiffs' original claim that they were entitled to $12 million in damages. *Bennett v. Behring Corp.*, 96 F.R.D. 343, 350-51 (S.D. Fla. 1982). The court explained that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damages," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial." *Id.* at 349-50. Similarly, in light of the numerous risks and uncertainties of that plaintiff faces in these Actions, the benefits of the Settlement are clearly fair and adequate. *See Bennett*, 737 F.2d at 986-87 (emphasizing that "compromise is the essence of settlement"); *Ingram*, 200 F.R.D at 689 (application of the *Bennett* factors "often justifies approving settlements that are substantial compromises of the relief that could be obtained through litigation;" approving settlement because it was "consistent with and in some respects exceed[ing] the relief that the class could obtain at trial").

### e. The Settlement Provides Substantial Benefits to the Class and Is Reasonable in Light of the Range of Potential Recovery

The Settlement provides tens of millions of dollars of benefits to the Class, as well as valuable equitable benefits to remedy to the wrongdoing alleged in the Complaints. Specifically, the Settlement includes a settlement fund of up to $50 million from which members of the Class may submit claim forms to collect up to $160, and a permanent injunction preventing Fidelity from using the fruits of their alleged illegal activity anymore.

The monetary and injunctive benefits of the Settlement are substantial standing alone, but when viewed in light of the risks of protracted litigation, the Settlement is clearly fair, reasonable and adequate. *See*, *e.g.*, *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 67 (S.D.N.Y. 2003) (noting "that the settlement fund is reasonable . . . in light of the attendant risks with litigation"). Obviously, the potential liquidated damages are greater than the benefits provided by the Settlement, but when weighed against the continued risk of litigation, a settlement for the negotiated relief was

and is viewed by Plaintiffs and their counsel as fair and reasonable.  This is why courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief."  *Warren*, 693 F. Supp. at 1059; *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators") (emphasis in original); *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (approving settlement falling between 3.2 and 3.7% of damages sought); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to 2% of estimated potential recovery); *In re Harnischfeger Indus., Inc.*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement"); *Sunbeam*, 176 F. Supp. 2d at 1332 ("the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate").  After all, "the very essence of a settlement is . . . a yielding of absolutes and abandoning of highest hopes." *Id.*

The real question is whether the Settlement appears reasonable in light of the range of potential recovery.  The answer is clearly "yes."  While the Settlement does not provide the greatest possible recovery of the **liquidated** damages claimed in the Complaints, it does provide a potential recovery of $160 for each Class member, which certainly exceeds the recovery that Plaintiffs might be awarded if Fidelity's merits or class certification arguments were accepted by this Court or by the court of appeals.[9]  Furthermore, where, as here, significant injunctive relief obtained for the Class addresses the very practices that gave rise to these Actions, a court is justified in viewing such injunctive relief as a significant component of the Settlement.  *See In re Mexico Money Transfer*

---

[9]      *See*, *e.g.*, *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995); *Motorsports Merch.*, 112 F. Supp. 2d at 1334; *Lachance v. Harrington*, 965 F. Supp. 630, 646 (E.D. Pa. 1997).

*Litig.*, 164 F. Supp. 2d 1002, 1017-18 (N.D. Ill. 2000), *aff'd* 267 F.3d 743, 748 (7th Cir. 2001) (concluding that the injunctive relief, which would require defendants to disclose the higher exchange rates paid by customers, was "the more significant component" of the settlement relief, because such disclosures "would end the very practice that gave rise to the claims asserted in these cases").

In these cases, Fidelity believes that the injunctive relief and tens of millions of dollars of benefits provided by the Settlement far outweigh Plaintiffs' potential recovery at trial, particularly in light of the substantial risks faced through continued litigation. While Plaintiffs continue to disagree with Fidelity's assessment of their claims, they recognize that there are risks inherent in this important litigation and that those risks strongly counsel in favor of the substantial value that this Settlement provides – particularly where, as here, Class members can obtain immediate monetary relief and an assurance that Fidelity will not do anything else with their personal, private information. The important benefits achieved for nearly 600,000 Florida residents, demonstrates the correctness of the parties appraisal of the fairness, reasonableness and adequacy of the Settlement.

### 5.    The Opinions of Class Counsel, Plaintiffs, and Absent Class Members Favor Approval of the Settlement

Class counsel and Plaintiffs believe the Settlement is fair and equitable. The Court should give "great weight to the recommendation of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe that these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court

is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").

The support of absent class members is evident not only in the positive reaction Plaintiffs' counsel has received from members of the class since notice was provided, but also in the minimal opposition to the Settlement. Notice was provided to the Class, which was given a full and fair opportunity to object to any or all of the terms of the proposed Settlement. The notification process to a class of approximately 600,000 Floridians has generated an insignificant number of requests to opt-out and, proportionately, very few objections to the Settlement.

Indeed, the ten objections to the Settlement properly filed with the Court (*i.e.*, less than two hundred thousandth of a percent of the total number of Class members),[10] can be placed into three categories: (1) persons who believe that the Settlement does not provide enough compensation to Class members; (2) persons who believe that their private information remains at risk, even with the Settlement; and (3) persons who object to the amount of attorneys' fees being requested by Plaintiffs' counsel. None of these few objections should impact the Court's approval of this excellent Settlement.

First, with respect to the benefits for the Class achieved by the Settlement, as discussed more fully above, direct monetary compensation to Class members of potentially upwards of $50 million, less notice and claims administration fees and attorneys' fees and costs, is hardly a trivial amount. This is particularly so given that, as some objectors have pointed out, there is no evidence that any member of the Class suffered any actual damages as a result of Fidelity's conduct. Moreover, the

---

[10]   *See Kehoe* Action, DE Nos. 198-199, 202-209; *Neilsen* Action, DE Nos. 15-16, 19-20, 23-24. Six additional objections received by counsel appear to not have been filed with the Court, based on the Docket for each case as of November 16, 2006.

objectors who are concerned about the amount of money they will receive appear not to appreciate that there were, as explained above, significant risks to Plaintiffs in connection with continuing to prosecute these actions.  Nor do these few objections support their assertions with any facts. Balancing the risks and uncertainties of this litigation against the substantial monetary benefits important injunctive relief achieved here, clearly demonstrates that the Settlement should be approved.

Second, with respect to certain objectors' concerns about the continued privacy of their personal information, those concerns are laid to rest by the injunctive relief element of the Settlement itself.  As part of the Settlement, Fidelity has agreed to undergo a privacy audit of itself and its marketing agent to confirm the complete and total destruction of Class members' personal, private information obtained from the FDHSMV.  Thus, the Settlement precludes Fidelity from using any of the ill-gotten information for any purpose whatsoever.  Class members should have no concerns about what happened to their motor vehicle information obtained by Fidelity following the approval of this Settlement.

Third, with respect to the conclusory objections concerning the amount of attorneys' fees sought by Plaintiffs' counsel, such objections should be overruled and, in any event, have nothing to do with the Court's approval of the Settlement itself as fair, reasonable and adequate.  Suffice it to say, however, that an attorneys' fee award of 20% of the Gross Settlement Fund obtained by Plaintiffs in these cases is more than reasonable under Eleventh Circuit precedent and the circumstances surrounding these hard-fought actions.  *See Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (benchmark established on payment of attorneys' fees in Eleventh Circuit is between 20% and 30% of the recovery and is exclusive of out-of-pocket expenses); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) (Eleventh

Circuit adjusted 30% benchmark for attorneys; fees upward to 33-1/3% following seven years of litigation); *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1470 (S.D. Fla. 1997) (quoting *Camdem I* and explaining 25% of the common fund is the benchmark).

Simply put, the overwhelming support for this Settlement and the lack of any meaningful opposition are a testament to its fairness. *See Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that when "only" 29 members of a 281 person class [*i.e.*, 10% of the class] objected, the response of the class as a whole "strongly favors [the] settlement"); *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977) (settlement approval affirmed despite objections by half of the current employee class); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-7-17B, 1998 WL 133741, at *28 (M.D. Fla. Jan. 27, 1998) ("[t]here have been only six objections received from a Class of approximately 109,000 policy owners, which is a *de minimus* number" relative to the size of the class).

* * *

Viewed either independently or taken together, these factors overwhelmingly demonstrate that the Settlement is fair, reasonable and adequate. In spite of the uncertainties and risks that Plaintiffs face in this litigation over both the short and long term, including the uncertainties of trial and the time that would surely come with a trial and any appeal, Class counsel has negotiated a resolution of this litigation that brings tens of millions of dollars in value to the Class and significant privacy assurances that cut directly to the substance of Plaintiffs' claims.

## V.      CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court enter and Order of final approval of the Settlement.

Dated: November 16, 2006                    Respectfully submitted,

                                            **LERACH COUGHLIN STOIA GELLER**
                                            **    RUDMAN & ROBBINS LLP**


                                            By: _s/Stuart A. Davidson_
                                                Paul J. Geller
                                                Florida Bar No. 984795
                                                _pgeller@lerachlaw.com_
                                                Stuart A. Davidson
                                                Florida Bar No. 0084824
                                                _sdavidson@lerachlaw.com_
                                                197 S. Federal Highway, Suite 200
                                                Boca Raton, Florida 33432
                                                (561) 750-3000 Telephone
                                                (561) 750-3364 Facsimile

                                            *Attorneys for Plaintiffs Timothy Neilsen, Timothy*
                                            *G. Martin, James Kehoe and the Class*

                                            **PATHMAN LEWIS LLP**


                                            By: _s/Roger A. Slade_
                                                Roger A. Slade
                                                Florida Bar No. 41319
                                                _rslade@pathmanlewis.com_
                                                Marc Pugliese
                                                Florida Bar No. 86169
                                                _mpugliese@pathmanlewis.com_
                                                One South Biscayne Tower
                                                2 S. Biscayne Blvd.
                                                Miami, FL  33131
                                                Telephone:  305/379-2425
                                                305/379-2420 (fax)

Tod Aronovitz
Florida Bar No. 186430
*ta@aronovitzlaw.com*
ARONOVITZ TRIAL LAWYERS
Suite 2700 – Museum Tower
150 W. Flagler Street
Miami, FL 33130
Telephone: 305/372-2772
305/375-0243 (fax)

John A. Yanchunis
Florida Bar No. 324681
*jyanchunis@jameshoyer.com*
Mark S. Fistos
Florida Bar No. 909191
*mfistos@jameshoyer.com*

JAMES HOYER NEWCOMER &
   SMILJANICH, P.A.
3301 Thomasville Road, A200
Tallahassee, FL 32308
Telephone: 850/325-2680
850/325-2681 (fax)

**Counsel for Plaintiff James Kehoe and the Class**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  03-80593-CIV-HURLEY/LYNCH

JAMES KEHOE, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

vs.

FIDELITY FEDERAL BANK AND TRUST,

Defendant.

_____/

Case No. 06-80557-CIV-HURLEY/HOPKINS

TIMOTHY NEILSEN and TIMOTHY G.
MARTIN, Individually and on Behalf of All
Others Similarly Situated,

Plaintiffs,

vs.

FIDELITY FEDERAL BANK AND TRUST,

Defendant.

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2006, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being

served this day on all counsel of record or pro se parties identified on the attached Service List in the

manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in

1

some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Stuart A. Davidson*
Stuart A. Davidson

I:\Fidelity Federal (C) 24100\MEM Final Approval - final.doc

2

Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case:

Tod N. Arnovitz
ta@arnovitzlaw.com

Stuart Andrew Davidson
sdavidson@lerachlaw.com; e_file_fl@lerachlaw.com

Roy Edmund Fitzgerald, III
rfitzgerald@pm-law.com

Paul Jeffrey Geller
pgeller@lerachlaw.com

Lorin Louis Mrachek
lmrachek@pm-law.com

Marc C. Pugliese
mpugliese@pathmanlewis.com

Alan Benjamin Rose
arose@pm-law.com

Roger Slade
cconde@pathmanlewis.com; rslade@pathmanlewis.com; isevilla@pathmanlewis.com

Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case
(who therefore require manual noticing).

John Allen Yanchunis, Sr.
James Hoyer Newcomber & Smiljamich
One Urban Centre
4830 West Kennedy Boulevard – Suite 5500
Tampa, Florida  33609